IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

THE STATE OF MISSISSIPPI,
*ex rel.* LYNN FITCH, in her
official capacity as Attorney General
of the State of Mississippi,

      Plaintiff,

                                 Civil Action No. 1:20-cv-168-LG-RPM

THE PEOPLE'S REPUBLIC OF CHINA,
THE COMMUNIST PARTY OF CHINA,
NATIONAL HEALTH COMMISSION OF
THE PEOPLE'S REPUBLIC OF CHINA,
MINISTRY OF EMERGENCY
MANAGEMENT OF THE PEOPLE'S
REPUBLIC OF CHINA, MINISTRY OF
CIVIL AFFAIRS OF THE PEOPLE'S
REPUBLIC OF CHINA, PEOPLE'S
GOVERNMENT OF HUBEI PROVINCE,
PEOPLE'S GOVERNMENT OF WUHAN
 CITY, WUHAN INSTITUTE OF VIROLOGY,
and CHINESE ACADEMY OF SCIENCES,

      Defendants.

## PLAINTIFF'S MOTION TO AUTHORIZE ALTERNATIVE METHODS OF SERVICE UNDER RULE 4 OF THE FEDERAL RULES OF CIVIL PROCEDURE

**COMES NOW**, Plaintiff, State of Mississippi, *ex rel.* Mississippi Attorney General

Lynn Fitch ("Plaintiff") and respectfully moves this Court to authorize alternative methods

of service under Rule 4(h) of the Federal Rules of Civil Procedure for Defendants Chinese

Academy of Sciences and Wuhan Institute of Virology. Further, Plaintiff respectfully moves

this Court to issue an order directing Plaintiff as to the appropriate means to serve the

Communist Party of China and, in support thereof, would show the following:

On or about August 17, 2021, Plaintiff attempted to serve summonses and copies of the complaint on all Defendants by submitting them to China's Central Authority under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (hereinafter "Hague Service Convention"). On February 22, 2022, Plaintiff received notice from the Ministry of Justice for the People's Republic of China that service would not be effectuated because China objected under Article 13 of the Hague Service Convention. Because service through ordinary channels, as proscribed by the Hague Service Convention, has proven futile, Plaintiff requests authority under Rule 4(h)(2) to serve the Chinese Academy of Sciences and the Wuhan Institute of Virology as non-governmental Defendants through alternative means authorized by law.

## FACTUAL BACKGROUND

All Defendants are located in China, and many Defendants are Chinese governmental entities. Accordingly, after filing the complaint, Plaintiff pursued service of all Defendants pursuant to 28 U.S.C. § 1608 and the Hague Service Convention.

For defendants that are foreign governments or their political subdivisions, where a "special arrangement for service" does not exist, 28 U.S.C. § 1608(a)(2) provides that "service in the courts of the United States…shall be made upon a foreign state or political subdivision of a foreign state…by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." Likewise, for non-governmental defendants located abroad, service may be made pursuant to F.R.C.P. 4(h)(2) by, "…any manner prescribed by Rule 4(f) for serving an individual, except personal delivery…" The cross-referenced Rule 4(f) provides that under subsection (1), service may be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service of Judicial and Extrajudicial Documents."

2

Accordingly, after filing the Complaint, Plaintiff initiated the process of perfecting service on all Defendants as authorized by the Hague Service Convention. On or about August 17, 2021, Plaintiff sent the required service documents for all Defendants to China's Central Authority. On February 22, 2022, Plaintiff received notice from the Ministry of Justice, People's Republic of China that service would not be effectuated, thereby objecting under Article 13 of the Hague Service Convention. Article 13 states, "Where a request for service complies with the terms of the present Convention, the State addressed may refuse to comply therewith only if it deems that compliance would infringe its sovereignty or security."[1]

Since the attempt to serve Defendants through the Hague Service Convention has failed, Plaintiff requests that the Court authorize alternative methods of service for the two non-governmental Defendants, Chinese Academy of Sciences and Wuhan Institute of Virology, pursuant to Rule 4(f)(3). *See, Zhang v. Baidu.com*, 932 F.Supp. 2d 561, 568 (S.D.N.Y. 2013) ("Baidu I") (authorizing a motion for alternative methods of service for a Chinese corporation after an Article 13 objection to a Hague Service Convention request); *Zhang v. Baidu.com*, 293 F.R.D. 508, 514 (S.D.N.Y. 2013) ("Baidu II") (granting the motion for alternative methods of service).

In addition, Plaintiff requests the Court issue an order directing the appropriate means to serve Defendant the Communist Party of China. The Communist Party of China is neither a foreign state nor a political subdivision, but it serves governmental functions. Under the formulation of Rule 4, Plaintiff is required to serve Defendant the Communist Party of China as one or the other, but Rule 4 does not have a mechanism for determining how to serve foreign political entities that do not comport with our American notions of

---

[1] Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters; Hague Service Convention.pdf.

governmental structure.

## ANALYSIS

I. **Rule 4(h)(2) and Cross-Referenced Rule 4(f)(3) Provide for an Alternative Method of Service.**

Rule 4(h)(2) of the Federal Rules of Civil Procedure governs the service of foreign corporations, partnerships, and other associations. It provides that service may be made, "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." The cross-reference Rule 4(f) provides three methods by which service can be perfected. No one method has primacy, and a plaintiff may use any of them to perfect service. *Baidu II*, 293 F.R.D. at 511-12; *Viahart, L.L.C. v. GangPeng*, 2022 WL 445161 at *3 (5th Cir. 2022). Service under "Rule 4(f)(3) 'stands independently, on equal footing' with Rule 4(f)(1)." *Baidu II*, 293 F.R.D. at 511 (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014–15 (9th Cir.2002)).

Rule 4(f)(1) authorizes service, "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Plaintiff has already attempted service under Rule 4(f)(1), and, on February 22, 2022, Plaintiff received notice that the request for service was rejected. Rule 4(f)(2)'s service upon an individual is not applicable. *Baidu II*, 293 F.R.D. at 511.[2]

Rule 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders." Notwithstanding China's Article 13 objection, this Court

---

[2] Even if Rule 4(f)(2) did apply, service under this provision likely would be futile. Letters rogatory would be transmitted to China's Central Authority, which would likely reject them as it did with the first request.

may still authorize an alternative method of service under Rule 4(f)(3); China's objection does not foreclose alternative methods of service.

In February of this year, the Fifth Circuit examined this same issue and found that serving a foreign defendant via email is proper under Rule 4(f)(3). *Viahart, L.L.C. v. GangPeng*, 2022 WL 445161 (5th Cir. Feb. 14, 2022). In *Viahart*, the plaintiff served two foreign defendants via email after the court granted a motion for alternative service. *Id.* at *1. In their decision affirming the lower court's ruling, the Fifth Circuit explained:

> Service on a foreign defendant is therefore proper when it is a court ordered method that is not prohibited by international agreement and is reasonably calculated, under the circumstances, to notify the defendant of the case and afford them an opportunity to present objections.

*Id.* at *3.

The Southern District of New York also has a case directly on point. *Baidu II*. 293 F.R.D. 508. Like our case, *Baidu II* involved a case against the People's Republic of China and non-governmental defendants in China. *Id.* at 510. The plaintiffs also attempted service through the Hague Service Convention and received an Article 13 rejection to their service request. *Id.* The court carefully evaluated the plaintiff's request for alternative methods of service and found:

- "A refusal to effect service under Article 13 of the Convention does not indicate that other "means" are "prohibited" – it indicates only that service through the Central Authority is not an option." *Id.* at 514.

- "A method of alternate service is acceptable if it "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Id.* at 514.

In *Baidu II*, the court considered plaintiff's four proposed methods of service: 1) service on Baidu's New York counsel, 2) publication in China, 3) e-mail and 4) fax.

*Id.* at 515. The court authorized service on Baidu's New York counsel because it was not prohibited by the Hague Service Convention, and there was evidence of adequate communication between Baidu and their counsel to satisfy the requirements of due process. *Id.*

## II.  Chinese Academy of Sciences and Wuhan Institute of Virology are Non-Governmental Defendants

The Chinese Academy of Sciences ("CAS") holds itself out as a nonprofit corporation.[3] Like many other national academies, it was established by the government but is a private, non-governmental entity.[4] The CAS governing document sets out that members of the CAS are elected to the institution.[5] Also like other national science academies, it provides advice to the government on matters of science but operates independently.[6] In a congressional report, institutions like CAS were described as, "public policy research institutes."[7]

The U.S. National Academy of Sciences ("NAS") serves as a useful comparison. It is also a private, nonprofit corporation.[8] The NAS was established by an Act of Congress, signed by President Lincoln in 1863. The NAS charter directs the Academy to provide independent, objective advice to the government "whenever

---

[3] https://www.linkedin.com/authwall?trk=gf&trkInfo=AQFOGiAhLoJxDAAAAYA6t1jA24BfBJDrwCjSakR7ERVMo4O0ZVuDlkNQtvwiRo_Y0rTaT9U4aa2aPDsps-HISlOFf2dkVadUCi1Fehizt9ILxQbacFdK3csdmIYXlZadN-HLI30=&originalReferer=https://www.google.com/&sessionRedirect=https%3A%2F%2Fwww.linkedin.com%2Fschool%2Fchinese-academy-of-sciences%2F

[4] https://english.cas.cn/about_us/introduction/201501/t20150114_135284.shtml.

[5] Statute for Membership of the Chinese Academy of Sciences, Chapter 2, Article 4 (amended 2021). http://english.casad.cas.cn/au/re/#:~:text=Chinese%20citizens%20who%20abide%20by,outstanding%20contributions%20to%20China%27s%20science.

[6] https://english.cas.cn/about_us/introduction/201501/t20150114_135284.shtml.

[7] SUSAN V. LAWRENCE AND MICHAEL F. MARTIN, CONG. RESEARCH SERV., R41007, UNDERSTANDING CHINA'S POLITICAL SYSTEM (2013).

[8] http://www.nasonline.org/about-nas/mission/.

called upon" by any government department. While the NAS was created by Congress and serves an essential function, it explicitly operates as a private, non-governmental entity.

The NAS is not the only example of such a private, non-governmental science academy. Other countries have similar institutions as set forth below.

| Country | National Science Academy |
|---------|--------------------------|
| U.K. | The Royal Society[9] |
| Germany | Leopoldina[10] |
| France | Académie des Sciences[11] |
| Austria | Austrian Academy of Sciences[12] |
| Italy | Accademia Nazionale dei Lincei[13] |

The CAS is also a member of the InterAcademyPartnership ("IAP"), along with the NAS, and 142 other members.[14] Explaining how these academies function, the IAP writes, "Indeed, although many academies were established by national governments and tasked with serving their countries by bringing scientific perspectives to bear on national and international issues, they are constituted as independent bodies."[15]

The Wuhan Institute of Virology ("WIV") is a subsidiary of the CAS, and since 1978, it has been under the administration of the CAS.[16] WIV is a research facility,

---

[9] https://royalsociety.org/about-us/history/.
[10] https://www.leopoldina.org/en/about-us/about-the-leopoldina/leopoldina-mission-statement/.
[11] https://www.academie-sciences.fr/en/.
[12] https://www.oeaw.ac.at/en/oeaw/academy/the-oeaw-at-a-glance/history-of-the-oeaw.
[13] https://www.lincei.it/it/storia.
[14] About IAP (interacademies.org).
[15] *Id.*
[16] http://english.whiov.cas.cn/About_Us2016/History2016/.

studying five major research fields: 1) etiology and epidemiology of emerging infectious diseases; 2) molecular virology; 3) immunovirology; 4) analytical pathogen microbiology; and 5) agricultural and environmental microbiology.[17] Like CAS, WIV was established by the State, but it serves a non-governmental function as a nonprofit research institute.[18]

Therefore, Plaintiff requests authority to serve the non-governmental defendants, Chinese Academy of Sciences and Wuhan Institute of Virology by emailing them copies of the translated service packets – which include summonses, the Complaint, and civil cover sheet – to publicly available email addresses for those defendants. Email addresses are publicly available for all three defendants and are posted on websites maintained by those organizations. Service by email is preferable to service of hard-copy documents through international delivery because China has objected to Article 10 of the Hague Service Convention, which provides for service by postal channels. Moreover, service by email to the publicly available email addresses of defendants rather than publication in the Chinese media is more reasonably calculated to give actual notice to the defendants.

Service by email is not prohibited by the Hague Service Convention and comports with the requirements of due process. Service by email to defendants' publicly available email addresses is "reasonably calculated…to apprise [defendants] of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

For these reasons, the Court should authorize Plaintiff to serve the non-governmental defendants – Chinese Academy of Sciences and Wuhan Institute of

---

[17] http://english.whiov.cas.cn/Research2016/Brief_Introduction2017/.
[18] *Id.*

Virology – under Rule 4(h) and cross-referenced Rule 4(f)(3) via email.

### III.   China Has Held out the Communist Party of China to be Both a Governmental and Non-governmental Entity.

Black's Law Dictionary defines a state as, "[t]he political system of a body of people who are politically organized; the system of rules by which jurisdiction and authority are exercised over such a body of people." (11th ed. 2019). It defines a political party as, "[a]n organization of voters formed to influence the government's conduct and policies by nominating and electing candidates to public office." *Id.* These are well defined concepts that comport with our understanding of a state and political party as they have functioned in our American legal society, but they do not translate well to China's governmental organization.

China itself, is unclear and contradictory about whether the Communist Party of China is formally a "state or political subdivision" for purposes of 28 U.S.C. § 1608(a)(2) and Rule 4 or something more akin to a political organization, as we are familiar with in the U.S., which is undoubtedly not a state or political subdivision.

In a 2013 Congressional Research Services report, this nebulous organization was described:

> The Party is widely perceived to support rule by law—law as a tool for governance—but not rule of law. The Party is particularly unwilling to submit itself to legal restraints. As noted earlier, although the Party is China's dominant political institution, with its leadership mentioned five times in the preamble to the state constitution, the Party and its bureaucracy are not mentioned in any of the articles of the constitution, leaving an unclear legal basis for the Party's powers.[19]

---

[19] Lawrence and Martin, Understanding China's Political System.

The Chinese State itself is "The People's Republic of China," and it was organized and created by a state constitution. *Id.* at 3-4. It is headed by the State President, and the State is responsible for policy implementation and day-to-day administration. *Id.* at 4. The Communist Party of China was created by a separate constitution and is headed by the General Secretary of the Communist Party. *Id.* at 5.

Unfortunately, the formalistic distinctions do not truly define the amorphous authority of the Party. The State President, Xi Jinping, is also the General Secretary of the Communist Party. *Id.* at 5. China's military, the People's Liberation Army, does not belong to the State but to the Communist Party. *Id.* at 6. Though largely nominal, China has eight other political parties. *Id.* at 33. These parties are required to accept the Communist Party's permanent leadership, but their members can hold leadership positions and exercise some influence. *Id.* The Communist Party has been described as both dominating the Chinese State and operating above and outside of the law. *Id.* at 2-3.

Plaintiff has diligently attempted to determine the proper way to serve defendant, the Communist Party of China. The Communist Party of China possesses some characteristics of both a governing and non-governmental entity; it also possesses disqualifying characteristics of both. As such, Plaintiff requests a court order directing the proper means to serve such an entity. If the Court determines that the Communist Party of China should be served under FSIA, 28 USC § 1608(a)(2), Plaintiff will transmit documents to the U.S. Secretary of State in order to effect service via diplomatic channels. If the Court determines that the Communist Party of China should be served as a non-governmental entity, Plaintiff requests authority to serve via email, as with the other non-governmental

10

defendants.

## CONCLUSION

For the reasons stated, Plaintiff, State of Mississippi, *ex rel.* Mississippi Attorney General Lynn Fitch respectfully requests that this Court issue an order (1) authorizing Plaintiff, pursuant to Rule 4(h) and cross-referenced Rule 4(f)(3), to serve Defendants the Wuhan Institute of Virology and the Chinese Academy of Sciences by providing translations into simplified Chinese of the Complaint and Summons by email at publicly available email address provided by those organizations; and (2) enter an order directing Plaintiff to serve Defendant the Communist Party of China either as a foreign state, pursuant to 28 U.S.C. § 1608(a)(4), or as a nongovernmental defendant, pursuant to Rule 4(h) and cross-referenced Rule 4(f)(3), as a non-governmental defendant.


Dated: April 22, 2022

Respectfully submitted,

**FOR PLAINTIFF STATE OF MISSISSIPPI**
**LYNN FITCH, ATTORNEY GENERAL**
**STATE OF MISSISSIPPI**
 */s/ Hart Martin*
Hart Martin, Miss. Bar No. 106129
Office of the Attorney General
Post Office Box 220
550 High Street, Suite 1200
Jackson, Mississippi 39205
Telephone: (601) 359-4223