IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

THE STATE OF MISSISSIPPI,
*ex rel.* LYNN FITCH, in her
official capacity as Attorney General
of the State of Mississippi,

    Plaintiff,

                                                Civil Action No. 1:20-cv-168-TBM-RPM

THE PEOPLE'S REPUBLIC OF CHINA,
THE COMMUNIST PARTY OF CHINA,
NATIONAL HEALTH COMMISSION OF
THE PEOPLE'S REPUBLIC OF CHINA,
MINISTRY OF EMERGENCY
MANAGEMENT OF THE PEOPLE'S
REPUBLIC OF CHINA, MINISTRY OF
CIVIL AFFAIRS OF THE PEOPLE'S
REPUBLIC OF CHINA, PEOPLE'S
GOVERNMENT OF HUBEI PROVINCE,
PEOPLE'S GOVERNMENT OF WUHAN
CITY, WUHAN INSTITUTE OF VIROLOGY,
and CHINESE ACADEMY OF SCIENCES,

    Defendants.

---

**PLAINTIFF'S SECOND MOTION TO AUTHORIZE ALTERNATIVE METHODS
OF SERVICE UNDER FEDERAL RULE OF CIVIL PROCEDURE 4**

---

    **COMES NOW**, Plaintiff, State of Mississippi, *ex rel.* Mississippi Attorney General Lynn Fitch ("Plaintiff") and respectfully moves this Court to authorize alternative methods of service under Rule 4(h) for Defendants Chinese Academy of Sciences, Wuhan Institute of Virology, and the Communist Party of China and, in support thereof, would show the following.

1

## INTRODUCTION

On or about August 17, 2021, Plaintiff attempted to serve summonses and copies of the complaint on all Defendants by submitting them to China's Central Authority under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (hereinafter "Hague Service Convention"). On February 22, 2022, Plaintiff received notice from the Ministry of Justice for the People's Republic of China that service would not be effectuated because China objected under Article 13 of the Hague Service Convention. After receiving the rejection, Plaintiff began the process of serving the six governmental Defendants – People's Republic of China, National Health Commission, Ministry of Emergency Management, Ministry of Civil Affairs, People's Government of Hubei Province, and People's Government of Wuhan City – via the U.S. Department of State as required by the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608(a)(4). The required documents were sent in April of 2022 to the Department of State. Additional translations of the reissued summonses were required and sent by Plaintiff, and the Department of State confirmed receipt of those on October 11, 2022.

Meanwhile, the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608(b), which governs service of non-governmental defendants, does not provide an avenue to serve via the Department of State. For non-governmental Defendants Chinese Academy of Sciences, Wuhan Institute of Virology, and the Communist Party of China, Plaintiff filed Plaintiff's Motion to Authorize Alternative Methods of Service Under Rule 4 of the Federal Rules of Civil Procedure on April 22, 2022. Doc. [14]. This motion was

denied on October 26, 2022. Doc. [28]. Plaintiff now files this second motion for alternative service as authorized by the Court's order. *Id.* Because service through ordinary channels, as proscribed by the Hague Service Convention, has proven futile, Plaintiff requests authority under Rule 4(h)(2) to serve the Defendants Communist Party of China, Chinese Academy of Sciences, and Wuhan Institute of Virology as non-governmental Defendants through alternative means authorized by law.

## FACTUAL BACKGROUND

All Defendants are located in China, and many Defendants are Chinese governmental entities. Accordingly, after filing the complaint, Plaintiff pursued service of all Defendants pursuant to 28 U.S.C. § 1608 and the Hague Service Convention.

For defendants that are foreign governments or their political subdivisions, where a "special arrangement for service" does not exist, 28 U.S.C. § 1608(a)(2) provides that "service in the courts of the United States…shall be made upon a foreign state or political subdivision of a foreign state…by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." Likewise, for non-governmental defendants located abroad, service may be made pursuant to F.R.C.P. 4(h)(2) by, "…any manner prescribed by Rule 4(f) for serving an individual, except personal delivery…" The cross-referenced Rule 4(f) provides that under subsection (1), service may be made "by any internationally agreed means of service that is reasonably calculated to give

3

notice, such as those authorized by the Hague Convention on the Service of Judicial and Extrajudicial Documents."

Accordingly, after filing the Complaint, Plaintiff initiated the process of perfecting service on all Defendants as authorized by the Hague Service Convention. On or about August 17, 2021, Plaintiff sent the required service documents for all Defendants to China's Central Authority. On February 22, 2022, Plaintiff received notice from the Ministry of Justice, People's Republic of China that service would not be effectuated, objecting under Article 13 of the Hague Service Convention. Article 13 states, "Where a request for service complies with the terms of the present Convention, the State addressed may refuse to comply therewith only if it deems that compliance would infringe its sovereignty or security."[1]

Plaintiff is unable to serve Defendants Chinese Academy of Sciences ("CAS"), Wuhan Institute of Virology ("WIV"), and the Communist Party of China ("CCP") by mail because China has specifically objected to service "by postal channels."[2] Since the attempt to serve Defendants through the Hague Service Convention has failed, Plaintiff requests that the Court authorize alternative methods of service for the three non-governmental Defendants, the CCP, CAS, and WIV, pursuant to Rule 4(f)(3). See, *Zhang v. Baidu.com*, 932 F. Supp. 2d 561, 568 (S.D.N.Y. 2013) ("*Baidu I*") (authorizing a motion for alternative methods of service for a Chinese corporation

---

[1] Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters; Hague Service Convention.pdf.
[2] See China – Central Authority & Practical Information, Hague Conference on Private Int'l Law, https://www.hcch.net/en/states/en/states/authorities/details3/?aid=243 (last visited November 15, 2022).

after an Article 13 objection to a Hague Service Convention request); *Zhang v. Baidu.com*, 293 F.R.D. 508, 514 (S.D.N.Y. 2013) ("*Baidu II*") (granting the motion for alternative methods of service).

## DISCUSSION

### I. Non-governmental Defendants May be Served by Email.

#### A. Rule 4(h)(2) and Cross-Referenced Rule 4(f)(3) Provide for an Alternative Method of Service.

Rule 4(h)(2) of the Federal Rules of Civil Procedure governs the service of foreign corporations, partnerships, and other associations. It provides that service may be made, "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." The cross-reference Rule 4(f) provides three methods by which service can be perfected. No one method has primacy, and a plaintiff may use any of them to perfect service. *Baidu II*, 293 F.R.D. at 511-12; *Viahart, L.L.C. v. GangPeng*, 2022 WL 445161 at *3 (5th Cir. 2022). Service under "Rule 4(f)(3) 'stands independently, on equal footing' with Rule 4(f)(1)." *Baidu II*, 293 F.R.D. at 511 (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014–15 (9th Cir.2002)).

Rule 4(f)(1) authorizes service, "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Plaintiff has already attempted service under Rule 4(f)(1), and, on February 22, 2022, Plaintiff

received notice that the request for service was rejected. Rule 4(f)(2)'s service upon an individual is not applicable. *Baidu II*, 293 F.R.D. at 511. Even if Rule 4(f)(2) did apply, service under this provision likely would be futile. Letters rogatory would be transmitted to China's Central Authority, which would likely reject them as it did with the first request.

Rule 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders," and China's objection does not foreclose alternative methods of service.

In February of this year, the Fifth Circuit examined this same issue and found that serving a foreign defendant via email is proper under Rule 4(f)(3). *Viahart, L.L.C. v. GangPeng*, 2022 WL 445161 (5th Cir. Feb. 14, 2022). The first defendant's, GangPeng, business address, as listed on their website, was located in Texas, where the plaintiffs attempted to serve via personal process server. *Id.* at *1. This "address led the [process server] to a mobile home community" where the "current homeowner stated she had never heard of 'He GangPeng'" after living in the home "since 1980." *Id.*

Viahart did not pursue personal service on the remaining defendants whose addresses were in China. *Id.* Instead, the plaintiff unsuccessfully attempted service via FedEx on the second defendant, Haixing. *Id.* The magistrate judge then ordered Viahart to send test emails to Haixing and the third defendant, Aszune. *Id.* at *1, 3. Neither of these test emails "'bounced back' as undeliverable," and Viahart's motion for alternative service via email was granted. *Id.* at *1, 3.

> In their decision affirming the lower court's ruling, the Fifth Circuit explained:
>
> Service on a foreign defendant is therefore proper when it is a court ordered method that is not prohibited by international agreement and is reasonably calculated, under the circumstances, to notify the defendant of the case and afford them an opportunity to present objections.

*Id.* at *3; *See also* Memorandum and Order at 3, *Missouri ex. rel. Schmitt v. People's Rep. of China*, No. 1:20-cv-0099 (E.D. Mo. May 11, 2021), ECF No. 22.

The Southern District of New York also has a case directly on point. *Baidu II*, 293 F.R.D. 508. Like our case, *Baidu II* involved a case against the People's Republic of China and non-governmental defendants in China. *Id.* at 510. The plaintiffs also attempted service through the Hague Service Convention and received an Article 13 rejection to their service request. *Id.* The court carefully evaluated the plaintiff's request for alternative methods of service and found, "[a] refusal to effect service under Article 13 of the Convention does not indicate that other "means" are "prohibited" – it indicates only that service through the Central Authority is not an option," and "[a] method of alternate service is acceptable if it "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Id.* at 514.

In *Baidu II*, the court considered plaintiff's four proposed methods of service: 1) service on Baidu's New York counsel, 2) publication in China, 3) e-mail and 4) fax. *Id.* at 515. The court authorized service on Baidu's New York counsel because it was not prohibited by the Hague Service Convention, and there was evidence of adequate communication between Baidu and their counsel to satisfy the requirements of due

7

process. *Id.* The court did not rule out service by email because the defendants' attorneys were in communication with plaintiffs. In our case, Plaintiff does not know any Defendant's counsel.

### B. Email service is likely to be received by Defendants.

On October 31, 2022, Plaintiff visited CAS' website - Chinese Academy of Sciences (cas.cn). The website lists their contact email, cas_en@cas.cn. That same day, Plaintiff sent a test email to cas_en@cas.cn. Attached. Exhibit B. Plaintiff *did not* receive a bounce back error message that would indicate the email did not transmit properly.

On October 31, 2022, Plaintiff visited the WIV's website - Wuhan Institute of Virology (cas.cn). The website lists their contact email, wiv@wh.iov.cn. That same day, Plaintiff sent two test emails to wiv@wh.iov.cn, but received bounce back notifications for both emails. Attached. Exhibit C. Plaintiff found the email address for WIV's Deputy Director Gengfu Xiao, xiaogf@wh.iov.cn. It is attached to a scholarly article[3] found in the Europe PMC database which is dedicated to "provid[ing] comprehensive access to life sciences literature from trusted sources."[4] On November 10, 2022, Plaintiff sent a test email to xiaogf@wh.iov.cn. Attached. Exhibit D. Plaintiff *did not* receive a bounce back error message that would indicate the email did not transmit properly.

---

[3] Yang C, Pan X, Xu X, et al. Salvianolic acid C potently inhibits SARS-CoV-2 infection by blocking the formation of six-helix bundle core of spike protein. Signal Transduction and Targeted Therapy. 2020 Oct;5(1):220. DOI: 10.1038/s41392-020-00325-1. PMID: 33024075; PMCID: PMC7538051.Salvianolic acid C potently inhibits SARS-CoV-2 infection by blocking the formation of six-helix bundle core of spike protein. - Abstract - Europe PMC.
[4] About Europe PMC, About - Europe PMC (last visited Nov. 22, 2022).

8

On November 15, 2022, Plaintiff visited the CCP's website - Chinese Communist Party News Network - People's Network. After clicking "contact us," Plaintiff was redirected to Contact us--People's Network. There, Plaintiff found the publicly available contact email listed, kf@people.cn. That same day, Plaintiff sent a test email to kf@people.cn. Attached. Exhibit E. Plaintiff *did not* receive a bounce back message that would indicate the email did not transmit properly.

When preparing the packets for service via the Hague Service Convention, Plaintiff had all documents translated into Simplified Chinese, as required. If service via email is granted, Plaintiff will send the summonses and copies of the complaint in both English and Simplified Chinese.

## II. The Communist Party of China, Chinese Academy of Sciences, and Wuhan Institute of Virology are Non-governmental Defendants.

### A. The Core Functions Test

28 U.S.C. § 1608(b) authorizes alternative forms of service upon an "agency or instrumentality of a foreign state." To determine if an entity qualifies as an agency or instrumentality of a foreign state, the D.C. Circuit Court of Appeals adopted the "core functions" test. *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994).

The core functions test turns on "whether the defendant is the type of entity 'that is an integral part of a foreign state's political structure, [or rather] an entity whose structure and function is predominately commercial.'" *Id.*, citing *Segni v. Commercial Office of Spain*, 650 F. Supp. 1040, 1041-42 (N.D. Ill. 1988). In

evaluating the structure and function of an entity, courts must examine the primary activities of the entity and determine if they are more similar to a government's function or a commercial enterprise's. *Hopkins v. Subaru Telescope National Astronomical Observatory of Japan*, 2019 WL 5865619 at *3 (D. Haw. Nov. 8, 2019).

Entities whose primary functions are generally associated with governments, the entity will be considered a foreign state or political subdivision for the purposes of service under 28 U.S.C. § 1608. *See Id.* (holding that operation of a national space program is governmental in nature.) However, courts disagree as to how strongly certain activities, namely the operation of armed forces, weighs in favor of governmental function. *Compare Transaero,* 30 F.3d 148, 153 (holding that as a rule, armed forces are "so closely bound up with the structure of the state that they must in all cases be considered as the foreign state itself") *with Ministry of Defense and Support for Armed Forces of Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 495 F.3d 1024, 1035 (9th Cir. 2007) *rev'd on other grounds* (rejecting the D.C. Circuit's categorical rule that armed forces will always be a part of the state itself).

The core functions of an entity acting as a private company, however, are predominately commercial. 2019 WL 5865619 at *3 (D. Haw. Nov. 8, 2019). For example, a national energy company whose primary function is to sell natural gas at low prices is an entity acting as a private company whose core functions are commercial. *Id.* citing *NML Capital, Ltd. v. Republic of Argentina*, 892 F. Supp. 2d 530, 533 (S.D.N.Y. 2012). Similarly, a public depository that operates like a bank is predominately commercial. *Id.,* citing *Space Expl. Techs.,* 2015 WL 1334291, at *5

(citing *NXP Semiconductors USA, Inc. v. Brevets*, 2014 WL 4621017, at *8 (N.D. Cal. Sept. 15, 2014)).

Merely being a part of the state or funded by the state is not dispositive to the issue. In *Magness v. Russian Federation*, the plaintiffs filed suit in the Southern District of Texas seeking a temporary restraining order to prevent a travelling exhibit of Romanov family jewels from leaving the jurisdiction. 247 F.3d 609 (5th Cir. 2001). The defendants included the Russian Federation, the Russian Ministry of Culture, the Russian State Diamond Fund, and the Cultural Foundation sponsoring the exhibit. *Id.*, at 611. The court found that Russia's State Diamond Fund, created to house and oversee Russia's collection of precious stones, was a fundamentally commercial entity and therefore an instrumentality of Russia. *Id.* at 611 n.1.

### B. Chinese Academy of Sciences

*Photos v. People's Rep. of China*, as cited by the court, did not involve CAS. 2020 WL 6889016 at (N.D. Tex. Nov 24, 2020). CAS was not a defendant in that case and was only mentioned in passing when the court noted that defendant WIV is a subsidiary of CAS. *Id.* at *5.

CAS was founded in Beijing on November 1, 1949, merging many of the pre-existing Chinese scientific institutes.[5] On its website, CAS describes its organization as, "[c]omprising a comprehensive research and development network, a merit-based learned society, and a system of higher education" which "brings together scientists and engineers from China and around the world to address both theoretical and

---

[5] Profile, Profile----Chinese Academy of Sciences (cas.cn) (last visited Nov. 22, 2022).

11

applied problems using world-class scientific and management approaches."[6] The webpage further elaborates that "CAS scientists conduct research in most areas of basic science and technology as well as strategic advanced technologies and areas related to the public welfare and the *development of emerging industries*."[7]

In 2019, CAS wrote an open letter discussing both its funding and structure, noting that half of its funding "has come directly from the central-government investment; the rest has been from competitive funding or technology transfer."[8] In contrast, a governmental agency, like the National Institutes of Health, receives all funding from the federal government.[9]

CAS regularly engages in commercial activity including the development of intellectual property and partnering with other research facilities to do so. Drug patents can be extremely lucrative during their initial exclusivity period. For example, AstraZeneca earned $69 billion during the lifetime of its patent for Nexium.[10]

A search of the World Intellectual Property Organization's patent database reveals that CAS has applied for over 130,000 patents, including those of CAS's subsidiaries like WIV, the Shanghai Institute of Materia Medica, and the Center for

---

[6] *Id.*
[7] *Id.* (emphasis added).
[8] Qingquan Zhang, CAS: with the people and the government, Nature Vol. 574, October 24, 2019 *d41586-019-03205-z.pdf (nature.com).
[9] KAVYA SEKAR, CONG. RESEARCH SERV., R43341, NATIONAL INSTITUTES OF HEALTH (NIH) FUNDING: FY1996-FY2023, MAY 20, 2022 *R43341.pdf (fas.org).
[10] Eric Sagonowsky, The decade's top 10 patent losses, worth a whopping $915B in lifetime sales, FiercePharma, Aug. 17, 2017 The decade's top 10 patent losses, worth a whopping $915B in lifetime sales | Fierce Pharma.

Excellence in Molecular Cell Science.[11]

A search of the U.S. Patent and Trademark Office's site, reveals that CAS and its subsidiaries are jointly listed as the assignee for over 4,000 patent applications.[12] For example, one of these patents, Patent Number 20220280589, is a patent for an Alzheimer's drug called GV-971.[13] The CAS's website states, in a post on January 15, 2020, "[i]t was approved by China's National Medical Products Administration in November, and went on sale in the domestic market last month."[14] Therefore, CAS' research and development of drugs and other inventions for market demonstrate that their primary function is commercial in nature.

### C. Wuhan Institute of Virology

In *Photos v. People's Rep. of China*, 2020 WL 6889016 at *5 (N.D. Tex. Nov 24, 2020), the district court found that plaintiffs' allegations that WIV weaponized coronavirus supported the conclusion that WIV was engaging in a governmental function. The court cited *Hopkins v. Subaru Telescope Nat'l Astronomical Observatory of Japan*, Civ. No. 19-00064 JMS-KJM, 2019 WL 5865619, at *3 (D. Haw. Nov. 18, 2019), noting that "'[W]aging war' is a 'quintessential government function [].'" *Photos*, 2020 WL 6889016 at *5.

Unlike the plaintiffs in *Photos*, the State of Mississippi has not alleged weaponization of the virus; instead, the State alleges that WIV is a research institute,

---

[11] WIPO - Search International and National Patent Collections.
[12] Patent Public Search | USPTO.
[13] Patent No. 20220280589 (filed Aug. 5, 2020) Patent Public Search | USPTO.
[14] Newsroom, https://english.cas.cn/newsroom/cas_media/202001/t20200115_229478.shtml (last visited Nov. 22, 2022).

including research on coronaviruses, and that WIV violated the Consumer Protection Act and Mississippi antitrust law. Doc. [1], at 6 and 27-29. Additionally, the development of bioweapons by a non-governmental entity for the government does not convert the entity into a governmental one. *In re Agent Orange Product Liability Litigation MDL No. 381*, 818 F.2d 145 (2nd Cir. 1987). In *Agent Orange*, a class action was brought against Dow Chemical Company and six other defendants as well as the U.S. government for injuries suffered by servicepersons as a result of exposure to Agent Orange in Vietnam. *Id.* at 148 and 176. Agent Orange was purchased by the U.S. government from the defendant chemical companies for use in Vietnam. *Id.* The defendant chemical companies were sued as individual legal entities apart from the U.S. government and settled with the class in their own capacities. *Id.* at 171-174.

In *Photos*, the court mentioned in an aside, "if the Court were to take judicial notice" of the WIV's website, there were other indicators of services traditionally associated with governments. *Photos*, 2020 WL 6889016 at *5. However, as discussed below, their website overwhelmingly indicates that WIV is a research institute engaged in commercial activities such as the development and patenting of intellectual property and developing drugs for commercial marketing.

In *Missouri ex. rel. Schmitt v. People's Rep. of China*, the court first granted the Plaintiff State of Missouri's motion for alternative service, allowing Missouri to serve Defendants WIV, CAS, and the CCP by email. 2022 WL 2643516 at *2 (E.D. Mo. July 8, 2022). Later, the court raised the issue of subject matter jurisdiction *sua sponte*. In the court's ruling finding WIV was a foreign-state defendant, the court

14

pointed to the fact that "China's National Health Commission ordered institutions not to publish information on the virus and ordered laboratories to destroy their samples" in support of its finding. *Id.* However, entities doing business in a state or country are bound to follow the laws and executive orders of those jurisdictions. The fact that an entity follows the direction of the government simply makes them a law-abiding entity, not part of the government.

While the court in *Schmitt* found that "the alleged conduct – both by CAS and WIV independently, and in cooperation with the remaining defendants," looked more like core governmental functions "integral to China's national interests," the court failed to recognize that it is not uncommon for independent companies to partner with governmental entities to serve national and public interests. *Schmitt*, 2022 WL 2643516 at *10. For example, the National Institutes of Health has a public-private partnership with ten biopharmaceutical companies and multiple non-profit organizations to develop diagnostic tools and therapies for Alzheimer's disease, Type 2 diabetes, autoimmune disorders, rheumatoid arthritis, lupus, and Parkinson's disease.[15] Public-private collaboration on areas of national interest, like healthcare, does not destroy the non-governmental status of private entities.

According to their website, WIV is a research institute founded in 1956 and initially named the Wuhan Institute of Microbiology.[16] In 1999, the Institute, "successfully passed the classification and positioning of Chinese Academy of

---

[15] Examples of NIH-FNIH Public-Private Partnerships, Examples of NIH-FNIH Public-Private Partnerships – Office of Science Policy (last visited Nov. 22, 2022).
[16] About WIV, About WIV----Wuhan Institute of Virology (cas.cn) (last visited Nov. 22, 2022).

15

Sciences, was included in the high-tech research and development base-type research institute."[17] The Institute is self-described as focusing on "basic and applied basic research in virology, immunology, emerging biotechnology, etc."[18] The Institute has five directors, led by Director General Dr. Yanyi Wang.[19] There are four committees within the Institute, two academic committees, one scientific advisory committee, and one international executive committee.[20]

According to public reporting, like many private research institutions, a portion of WIV's budget is funded by the Chinese government.[21] However, WIV also receives grants. For instance, the National Institutes of Health awarded a grant to EcoHealth Alliance, Inc. that was then given to WIV.[22] In contrast, the National Institute of Nursing Research (NINR), a subsidiary of the National Institutes of Health (NIH) receives its funding through congressional petition for a budget via a Congressional Justification.[23] The NINR leads nursing research and provides funding to applicants seeking to conduct research.[24]

WIV regularly engages in commercial activity including the development of intellectual property and partnering with other research facilities to do so. A search of the World Intellectual Property Organization's patent database reveals that WIV

---

[17] *Id.*
[18] *Id.*
[19] Directors, Directors----Wuhan Institute of Virology (cas.cn) (last visited Nov. 22, 2022).
[20] Committees, Committees----Wuhan Institute of Virology (cas.cn) (last visited Nov. 22, 2022).
[21] Jocelyn Kaiser, Draft bill would ban CDC, NIH from funding lab research in China. Science, July 12, 2022 Draft bill would ban CDC, NIH from funding lab research in China | Science | AAAS.
[22] Letter from Department of Health & Human Services to Chair Cathy McMorris Rodgers, October 20, 2021 NIH-Document-Production-Cover-Letter-2021.10.20_McMorris-Rodgers.pdf (house.gov).
[23] NINR Budget FY 2022 at https://www.ninr.nih.gov/sites/files/docs/NINR-Budget-FY-2022-508c.pdf.pdf.
[24] NINR Research Funding Opportunities at https://www.ninr.nih.gov/researchandfunding/fundingopportunities (last visited Nov. 22, 2022).

has applied for at least 266 patents.[25] For example, WIV applied for patent Number 1306960 in China related to an influenza vaccine and preparation method.[26] In another example, in January of 2020, WIV filed for a patent covering the use of remdesivir as an experimental treatment drug for COVID-19.[27] A search of the U.S. Patent and Trademark Office's site, reveals that WIV is listed as the assignee for at least five patent applications.[28] In the last example, Patent Number 20140161836, assigned to WIV, is a patent for a dental caries vaccine and preparation methods of the vaccine.[29] As for collaborative research, WIV and the University of Texas medical Branch at Galveston entered into a memorandum of understanding ("MOU") for a joint research project and agreed to share any potential patents.[30]

WIV has not only patented intellectual property but has also developed drugs for market. In a joint effort with the Shanghai Institute of Materia Media, WIV developed an oral drug, anti-SARS-CoV-2 nucleoside, with planned clinical trials in 2021.[31]

---

[25] WIPO - Search International and National Patent Collections.
[26] CN1631439 Curtail hemagglutinin vaccine for preventing influenza virus and its preparing method (wipo.int).
[27] Enrico Bonadio and Andrea Baldini, COVID-19, Patents and the Never-Ending Tension between Proprietary Rights and the Protection of Public Health, Cambridge University Press, April 11, 2020 COVID-19, Patents and the Never-Ending Tension between Proprietary Rights and the Protection of Public Health - PMC (nih.gov).
[28] Document ID US 20190353642 A1 (filed June 14, 2017); Document ID US 20180371467 A1 (filed Nov. 7, 2016); Document ID US 20150113673 A1 (filed Oct. 23, 2013); Document ID US 20140161836 A1 (filed Dec. 23, 2011); Document ID US 8449891 B2 (filed Nov. 27, 2009). Patent Public Search | USPTO.
[29] U.S. Patent No. 20140161836 (filed Dec. 29, 2011). Patent Public Search | USPTO.
[30] Emily Kopp, Wuhan lab can delete data in 'explosive' legal agreement with U.S. lab, U.S. Right to Know, April 20, 2022 Wuhan lab can delete data in 'explosive' legal agreement with U.S. lab - U.S. Right to Know (usrtk.org); Formal-Cooperative-Agreement.pdf (usrtk.org).
[31] Leng Shumei, Chinese researchers make progress in COVID-19 oral drugs, Global Times, November 21, 2021 Chinese researchers make progress in COVID-19 oral drugs - Global Times.

### D. The Communist Party of China

The People's Republic of China (PRC) and the CCP are distinct entities. The Constitution of the People's Republic of China mentions the CCP in a historical reference within the preamble. The National People's Congress of the People's Republic of China, *Constitution of the People's Republic of China Preamble* (November 17, 2022) *available at*

http://www.npc.gov.cn/zgrdw/englishnpc/Constitution/2007-11/15/content_1372962.htm. The last reference to the CCP in the Constitution refers to them as leaders of a "system of … multi-party cooperation and political consultation." *Id.* The articles distributing power to the various levels of government and their offices are devoid of any mention of any particular party. The National People's Congress of the People's Republic of China, *Constitution of the People's Republic of China* ch. I-IV (November 17, 2022) *available at*

http://www.npc.gov.cn/zgrdw/englishnpc/Constitution/node_2825.htm.

Though the Communist Party of China holds considerable power, there are eight other political parties in China.[32] The Revolutionary Committee of the Chinese Kuomintang has 101,865 members that include employees working in government organizations, as well as intellectuals in the fields of science, technology, culture, education and medicine.[33] The China Democratic League has approximately 230,000

---

[32] SUSAN V. LAWRENCE AND MARI Y. LEE, CONG. RESEARCH SERV., R46977 , CHINA'S POLITICAL SYSTEM IN CHARTS: A SNAPSHOT BEFORE THE 20TH PARTY CONGRESS, Nov. 24, 2021 R46977 (congress.gov).

[33] Professor Giancarlo Elia Valori, The Other Political Parties in China: History and Presence, Modern Diplomacy, May 11, 2022 The Other Political Parties in China: History and Presence - Modern Diplomacy.

18

members.[34] The China Democratic National Construction Association has approximately 100,000 members mainly composed of national industrialists and businessmen, as well as experts in the field.[35] The China Association for Promoting Democracy has approximately 100,000 members.[36] The Chinese Peasants' and Workers' Democratic Party has approximately 90,000 members, and most of its members are intellectuals in the fields of medicine, science, technology, culture and education.[37] The China Justice Party has approximately 20,000 members, and the "3 September" Society has approximately 100,000 members.[38] Finally, the Taiwan Democratic Self-Government League has approximately 2,100 members.[39]

Of these various parties, many leading representatives have been elected as deputies to the National People's Congress.[40] Furthermore, many of them serve in leadership positions in NPC standing committees, regional governments, and are members of economic, cultural, education, science, and technology ministries at all levels.[41] Since 1950, the democratic parties have meaningfully participated the management of State affairs.[42] Given the diversity of the various political parties in China's government, it would be remiss to say that the CCP is the sole governing authority considering the numerous ideologies represented in the National People's Congress.

---

[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*

## CONCLUSION

Due to the non-governmental nature of defendants, Plaintiff, State of Mississippi, *ex rel.* Mississippi Attorney General Lynn Fitch respectfully requests that this Court issue an order authorizing Plaintiff, pursuant to Rule 4(h) and cross-referenced Rule 4(f)(3), to serve Defendants Wuhan Institute of Virology, Chinese Academy of Sciences, and the Communist Party of China by providing translations into simplified Chinese of the Complaint and Summons by email at publicly available email address provided by those organizations. In the alternative, Plaintiff requests permission to serve via the Department of State under 28 U.S.C. § 1608(a).

Dated: November 22, 2022.

Respectfully submitted,

**FOR PLAINTIFF STATE OF MISSISSIPPI
LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI**

*/s/ Elisabeth Hart Martin*
Elisabeth Hart Martin, Miss. Bar No. 106129
Office of the Attorney General
Post Office Box 220
550 High Street, Suite 1200
Jackson, Mississippi 39205
Telephone: (601) 359-4223