IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

THE STATE OF MISSISSIPPI,
*ex rel.* LYNN FITCH, in Her

Official Capacity as Attorney General
of the State of Mississippi,

    Plaintiff,

                                                      Civil Action No. 1:20-cv-168-TBM-RPM

THE PEOPLE'S REPUBLIC OF CHINA,
THE COMMUNIST PARTY OF CHINA,
NATIONAL HEALTH COMMISSION OF
THE PEOPLE'S REPUBLIC OF CHINA,
MINISTRY OF EMERGENCY
MANAGEMENT OF THE PEOPLE'S
REPUBLIC OF CHINA, MINISTRY OF
CIVIL AFFAIRS OF THE PEOPLE'S
REPUBLIC OF CHINA, PEOPLE'S
GOVERNMENT OF HUBEI PROVINCE,
PEOPLE'S GOVERNMENT OF WUHAN
CITY, WUHAN INSTITUTE OF VIROLOGY,
and CHINESE ACADEMY OF SCIENCES,

    Defendants.

---

MEMORANDUM BRIEF IN OPPOSITION TO MOTION FOR LEAVE TO
FILE *AMICUS CURIAE* BRIEF BY
THE CHINA SOCIETY OF PRIVATE INTERNATIONAL LAW

---

INTRODUCTION

The State of Mississippi has moved for a default judgment against the six

Defendants who have been served, The People's Republic of China, People's

Government of Hubei Province, People's Government of Wuhan City, National Health Commission of the People's Republic of China, Ministry of Emergency Management of the People's Republic of China, and Ministry of Civil Affairs of the People's Republic of China. For the remaining three Defendants, Plaintiff received notice of rejection of the service request by China's Central Authority on February 22, 2022. Plaintiff continues to seek service for the remaining three Defendants, and the State Department has received and is processing the service request. No Defendant has appeared in the case, as of the date of this filing, and, in fact, China's Ministry of Foreign Affairs has made it clear they have no intention of doing so. That is, until now, when a mouthpiece for Defendants appears in the guise of a disinterested academic organization seeking to file a friend of the court brief, an effort to make the arguments of the Defendants while evading the jurisdiction of this Court.

According to the China Society of Private International Law's website, the Society was formed by the Wuhan University Institute of International Law and law school after holding a national teaching seminar in 1987 "under the support of the Education Commission and the Justice Department." History of China Society of Private International Law, last visited Aug. 6, 2023, available at: http://www.cspil.org/Plus/m_default/Cms/docDetail.php?ID=185. The Standing President of the Society is Xiao Yongping, the dean of the Wuhan University Law School. China Society of Private International Law, Xiao Yongping, available at: http://www.cspil.org/Plus/m_default/Cms/docDetail.php?ID=105. Wuhan University

is simply an educational branch and subdivision of the Communist Party of China.

On Wuhan University's website, one of the "Functional Departments" listed is the Party Affairs Department, listing several offices held by Defendant Communist Party of China, including, "Office of the CPC Wuhan University Committee and Administration" and "the CPC Committee of Ministries and Directly Affiliated Units of Wuhan University. Wuhan University, Administration, last visited Aug. 6, 2023, available at:

https://en.whu.edu.cn/About_WHU1/Administrative.htm.

The Society hosts annual forums jointly with the Ministry of Foreign Affairs. Guangjian Tu, Global Forum on Private International Law & 2017 Annual Meeting of China Society of Private International Law: Cooperation for Common Progress?Evolving Role of Private International Law" held in Wuhan, China, Oct. 4, 2017, available at: https://conflictoflaws.net/2017/global-forum-on-private-international-law-2017-annual-meeting-of-china-society-of-private-international-law-cooperation-for-common-progressevolving-role-of-private-international-law-h/. The Executive Vice President of the Society, Xiao Yongping, is also a member of the International Law Advisory Committee to the Ministry of Foreign Affairs and a Legal Advisor to the Wuhan People's Government. Contributor Detail, China Justice Observer, available at: Yongping XIAO 肖永平 - China Justice Observer.

## ARGUMENT

**I.     The Society has failed to disclose their true interest in this case.**

Though this case is not on appeal, "the filing of amicus briefs is governed by Federal Rule of Appellate Procedure 29." *Lefebure v. D'Aquilla*, 15 F. 4th 670, 673 (5th Cir. 2021). F.R.C.P. 29 requires amici "to state their 'interest' in the case." *Id.* (quoting Fed. R. App. P. 29(a)(3)). District courts look to this rule in deciding whether to grant leave to file an amicus brief. *Smith et al. v. Hosemann, et al.*, 2022 WL 2168960 at * 3 (N.D. Miss. May 23, 2022) ("The filing of amicus briefs is governed by Federal Rule of Appellate Procedure 29.").

In the Statement of Interest section of the Society's Memorandum in Support of Motion for Leave to file Amicus Curiae Brief, the Society attempts to paint a picture of a disinterested academic organization – "For decades, the Society has dedicated its efforts to the consistent interpretation and application of international law and principles of sovereign immunity." Dkt. No. 47 at 2. The Society fails to disclose that its arguments are not a dispassionate application of law but instead an argument for their own interest as a branch of the PRC and CPC. Rather than properly answering Mississippi's complaint, Defendants purport to put their arguments in this case before the Court through the backdoor via an amicus brief, filed by another spokesperson for the Defendants.

The Society has failed to disclose its true interest and has attempted to improperly put before the Court arguments that should have been raised by

Defendants in their Answer and subsequent litigation. For this reason alone, the Motion For Leave to file Amicus Curiae Brief should be denied.

II. **The State has properly asserted that Defendants engaged in commercial activities.**

Plaintiff has properly presented evidence of commercial activities engaged in by Defendants. The Society argues that the Complaint fails to "allege that activities of production, purchase, and sale of PPE are of Defendants or otherwise attributable to them." Dkt. No. 46-1 at 8. Though not an exhaustive list, Plaintiff has included such allegations in paragraphs 1, 6, 38, 76, 120, 124, 130, 135, and footnote 76 of the Complaint. Compl., Dkt. No. 1. The Society further argues that government-directed research "is not commercial in nature." Dkt. No. 46-1 at 11. However, the Chinese Academy of Sciences own website states, "CAS has strengthened ties with the industrial sector to conduct joint research and *commercialize* discoveries." CAS, Profile, last visited Aug. 6, 2023, available at:

https://english.cas.cn/about_us/introduction/201501/t20150114_135284.shtml. In *Rote*, the Sixth Circuit found that the negligent design and manufacture of a product by a state-owned entity was enough to meet the commercial activity section, and "it does not follow that the sale of goods is a necessary predicate to a finding that an activity is 'commercial' in nature." *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 390 (6th Cir. 2016). See also *Supra Medical Corp. v. McGonigle*, 955 F.Supp. 374 (E.D. Penn. 1997) ("First, UMDS' testing of the medical equipment qualifies as 'commercial' activity, not simply academic research as Defendants claim.").

The Society argues through their proposed amicus brief that activities alleged in the Complaint are governmental functions of regulation or an exercise of "police power." The Society argues that like the Republic of Argentina in *Weltover*, this Court should find that the Defendants engaged in activity that cannot be done by private parties but only by a sovereign. Dkt. No. 46-1 at 6-7. However, the facts in *Weltover* are not only distinguishable to the present case, but support Plaintiff's argument that these were indeed commercial activities. In *Weltover*, pursuant to a "Presidential Decree, Argentina unilaterally extended the time for payment [of bonds] and offered bondholders substitute instruments as a means of rescheduling the debts." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992). Three bondholders sued when Argentina did not pay. *Id.* Plainly, Argentina's action is that of government regulation, because private citizens cannot issue presidential decrees, as the Court explained, "because such authoritative control of commerce cannot be exercised by a private party." *Id.* at 614.

In the present case, the Society attempts to characterize all of this conduct as though it was performed in a regulatory function simply because Defendants are a foreign state and their agencies or political subdivisions. However, private persons can and do engage in the same type of violative conduct – concealing information, hoarding resources, and raising prices. *Weltover*, 504 U.S. at 614. ("Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce." (quotations omitted)).

A. **Defendants commercial activities were not an exercise of government regulatory authority and are no different from activities of private parties.**

Plaintiff has alleged that Defendants engaged in an unfair or deceptive trade practice by concealing the seriousness of COVID-19. Plaintiff has enforced the same law against private parties, including a recent settlement with C.R. Bard for their failure "to disclose serious and life-altering risks of permanently implanted surgical mesh devices." Press Release, Attorney General Fitch Announces $60 Million Multistate Settlement with C.R. Bard," available at:

https://www.ago.state.ms.us/2020/09/24/attorney-general-fitch-announces-60-million-multistate-settlement-with-c-r-bard/. Similarly, the Federal Trade Commission (FTC), which enforces the federal counterpart of this statute, has brought cases against private persons who likewise engaged in concealing information or providing misinformation. In *Network Services*, the FTC sued a group of related companies and their senior executives for selling kiosk opportunities that did not exist. *F.T.C. v. Network Services Depot, Inc.*, 617 F. 3d 1127, 1131-33 (9th Cir. 2010). These companies and executives concealed the scope of their fraud and misrepresented the business opportunities to potential customers. *Id.* at 1133-35. Concealing information in order to maximize profits on a product is not governmental regulation and is in fact the type of conduct regularly engaged in by private parties, which law enforcement agencies, like the Plaintiff and FTC, bring actions to stop. Plaintiff has sufficiently alleged conduct by Defendants

demonstrating their efforts to conceal the seriousness of COVID-19 and make representations about the virus they knew to be false.

Plaintiff has alleged that Defendants hoarded PPE and later sold PPE at higher prices, in violation of the Mississippi consumer protection laws and antitrust laws. This is purely commercial conduct not typical of sovereigns. Plaintiff, State of Mississippi, has taken action under the state consumer protection laws against private actors for their actions to hoard and drive up prices for PPE. Press Release, AG Fitch Recovers Nearly 500,000 PPE Items From Price Gouger, Gives Back to Community Healthcare Heroes and First Responders, March 19, 2021, available at: https://www.ago.state.ms.us/2021/03/19/ag-fitch-recovers-nearly-500000-ppe-items-from-price-gouger-gives-back-to-community-healthcare-heroes-and-first-responders/ ("Gulf Coast Pharmaceuticals Plus, LLC was excessively marking up and selling PPE that was in short supply at the beginning of the COVID-19 pandemic." (cleaned up)). Similar to the PRC and related defendants, during the height of the pandemic, two men in Tennessee stocked up on over 17,000 bottles of hand sanitizer and later resold it for much higher than they paid. Neil Vidgor, Tennessee Brothers Who Hoarded Hand Sanitizer Settle to Avoid Price-Gouging Fine, NEW YORK TIMES, April 22, 2020, available at: Tennessee Brothers Who Hoarded Hand Sanitizer Settle to Avoid Price-Gouging Fine - The New York Times (nytimes.com). This case was settled by the Tennessee Attorney General's Office. *Id.* In another instance, a man in New York stockpiled N95 and surgical masks, medical-grade gloves, and other PPE to resell at a steep mark up. Neil Vigdor, A Hoarder's Huge Stockpile of

Masks and Gloves Will Now Go to Doctors and Nurses, F.B.I. Says, NEW YORK TIMES, April 2, 2020, available at:

https://www.nytimes.com/2020/04/02/nyregion/brooklyn-coronavirus-price-gouging.html. In this case, the Defendants' actions are no different from others who took advantage of the need for PPE supplies during the pandemic to maximize their own profit.

Plaintiff has also alleged that Defendants misrepresented the standard, quality, or grade of the PPE from China. This, too, is certainly not an action unique to sovereigns. Last year, the FTC took action against Adam Harmon and the two companies he controlled for falsely marketing PPE and light fixtures they sold as "Made in USA," when they were made overseas. *U.S. v. Axis LED Group, LLC, et al.*, Case No. 3:22-cv-01389 (N.D. Ohio Aug. 5, 2022). Ultimately, the case resulted in a consent decree, filed by the U.S. Department of Justice. Press Release, FTC Sues Marketer of Personal Protective Equipment and Light Fixtures for Advertising Claims About Products Being Made in the USA and Government-Certified, Aug. 9, 2022, available at: https://www.ftc.gov/news-events/news/press-releases/2022/08/ftc-sues-marketer-personal-protective-equipment-light-fixtures-advertising-claims-about-products-0. In the same press release, the FTC notes that the agency brought more than a dozen cases against "COVID-19 predators" related to other COVID-fraud. *Id.*

Finally, there is no need for Plaintiff to respond to the Society's arguments made in "II. The 'noncommercial tort' exception to sovereign immunity does not apply."

Dkt. No. 46-1 at 16-19. As the Society notes, the State has not pleaded this exception.

### III. States are authorized to sue under the FSIA.

In their proposed amicus brief, the Society argues that U.S. states should not be allowed to sue under the FSIA. Dkt. No. 46-1 at 19-21. However, a plain reading of the statutes contradicts that assertion. 28 U.S.C. § 1330(a) states, in relevant part, "The district courts shall have original jurisdiction without regard to amount in controversy of *any nonjury civil action* against a foreign state as defined in section 1603(a) of this title as to *any claim*..." (emphasis added). See also *Turkiye Halk Bankasi A.S. v. U.S.*, 143 S.Ct. 940, 947 (2023). The text of the operative statues, including 28 US.C. § 1330(a), § 1604, § 1605 and § 1606 include no language limiting who may bring a claim against a foreign state, and the Society points to no statutory language or case to support their contention.

Even if such a limitation existed, the State is authorized, by statute, to "bring all actions and all remedies to which individuals are entitled in a given state of case." Miss. Code Ann. § 11-45-11. The Supreme Court has also considered the question of whether a state may bring suit when an act states that suit may be brought by a "person." *Georgia v. Evans*, 316 U.S. 159 (1942). In *Evans*, the Court found that states could sue under the Sherman Act for harms done to it as a "person." *Evans*, 316 U.S. at 162 ("Nothing in the Act, its history, or its policy, could justify so restrictive a construction of the word 'person' in s 7 as to exclude a State.").

## IV.  The Act-of-State Doctrine

The act-of-state doctrine is a defense, which has not been properly presented before this court, as no defendant has appeared or answered the State's complaint. The act-of-state doctrine is a "substantive defense on the merits." *Republic of Austria v. Altmann*, 541 U.S. 677, 700 (2004); See also *Samantar v. Yousuf*, 130 S. Ct. 2278, 2290-91 (2010). As explained above in Section I, the Society attempts to circumvent this by raising an argument in place of the Defendants.

Furthermore, even once properly raised, the act-of-state doctrine is not a complete defense. First, the act-of-state doctrine is not a jurisdictional bar; it requires a court to accept the validity of an act of foreign sovereign within its own territory, but it does not deprive the court of jurisdiction over the matter. *Ricaud v. American Metal Co., Ltd.*, 246 U.S. 304, 309 (1918). Second, once properly raised, a court must "apply the law of the foreign state as the rule of decision when faced with challenges to the official acts of a sovereign government." *Hargrove v. Underwriters at Lloyd's, London*, 937 F. Supp. 595, 601 (S.D. Texas, Galveston Division 1996). In *Hargrove*, the plaintiff sued because the Colombian government failed to pay Hargrove's ransom and for claims of misrepresentation and breach of the duty of good faith and fair dealing. *Id.* at 603-604. Because defendants failed to pay the ransom at the direction of the Colombian government, the first claim was dismissed. *Id.* at 604. However, the court could not determine if the claims for misrepresentation and breach of the duty of good faith and fair dealing were likewise barred by the act-of-state doctrine, and the case continued. *Id.* at 607-608.

If Defendants were to properly raise the act-of-state doctrine as a defense, it would be appropriate to evaluate which, if any claims, might be barred. However, as of the date of this filing, no Defendant has appeared or otherwise defended against Plaintiff's Complaint. In the Society's accompanying Memorandum to their Motion, they argue that without this amicus brief, "only one point of view will be represented." Dkt. No. 47 at 5. Defendants have had ample time to answer or otherwise defend against Plaintiff's suit. Plaintiff's first service attempt was sent to China's Central Authority on or about August 17, 2021. Plaintiff received notice that this service request was rejected on February 22, 2022. Since at least February 22, 2022, Defendants have had time to prepare a defense. Instead, Defendant, the Ministry of Foreign Affairs, sent a cover letter attached to the diplomatic notes of service stating, "China does not recognize and will not participate in these two vexatious litigation lawsuits." Dkt. No. 44-1, Exhibit A. If Defendants would like to present another "view" of the case, they have had more than enough time.

## CONCLUSION

Plaintiff State of Mississippi requests that this court deny The China Society of Private International Law's request for leave to file an *amicus curiae* brief.

Respectfully submitted, this the 8th day of August, 2023.

**FOR PLAINTIFF STATE OF MISSISSIPPI
LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI**

 */s/ Elisabeth Hart Martin*
Elisabeth Hart Martin, Miss. Bar No. 106129
Office of the Attorney General
Post Office Box 220
550 High Street, Suite 1200
Jackson, Mississippi 39205
Telephone: (601) 359-4223