IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

THE STATE OF MISSISSIPPI,
*ex rel.* LYNN FITCH, in her
official capacity as Attorney General
of the State of Mississippi,

    Plaintiff,

                                        Civil Action No. 1:20-cv-168-TBM-RPM

THE PEOPLE'S REPUBLIC OF CHINA,
THE COMMUNIST PARTY OF CHINA,
NATIONAL HEALTH COMMISSION OF
THE PEOPLE'S REPUBLIC OF CHINA,
MINISTRY OF EMERGENCY
MANAGEMENT OF THE PEOPLE'S
REPUBLIC OF CHINA, MINISTRY OF
CIVIL AFFAIRS OF THE PEOPLE'S
REPUBLIC OF CHINA, PEOPLE'S
GOVERNMENT OF HUBEI PROVINCE,
PEOPLE'S GOVERNMENT OF WUHAN
CITY, WUHAN INSTITUTE OF VIROLOGY,
and CHINESE ACADEMY OF SCIENCES,

    Defendants.

**MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF CASE MANAGEMENT AND SCHEDULING ORDER**

        COMES NOW, the Plaintiff, State of Mississippi, *ex rel.* Lynn Fitch, Attorney General, and respectfully files this Memorandum Brief in Support of its Motion for Entry of Case Management and Scheduling Order.

1

## I. PROCEDURAL HISTORY

The State filed its Complaint on May 12, 2020. Pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention") and the Foreign Sovereign Immunity Act, 28 U.S.C. § 1608(a)(2) ("FSIA"), the State sent a request to China's Central Authority to serve Defendants on or about August 17, 2021. On February 22, 2022, the State received notice from the Ministry of Justice, People's Republic of China that service was rejected under Article 13 of the Hague Service Convention because, "[t]he execution of the request would infringe the sovereignty or security of the People's Republic of China (Article 13)." Dkt. #12. Article 13 of the Hague Service Convention permits rejection of properly submitted service requests "only if it deems that compliance would infringe its sovereignty or security."[1]

On April 27, 2022, the State delivered documents to the Clerk's Office to serve Defendants People's Republic of China, People's Government of Hubei Province, People's Government of Wuhan City, National Health Commission of the People's Republic of China, Ministry of Emergency Management of the People's Republic of China, and the Ministry of Civil Affairs of the People's Republic of China to the Clerk's Office. The Clerk transmitted these documents to the U.S. Department of State on the same day. Following communication of receipt from the U.S. Department of State, the State provided translated copies of the reissued summons to the U.S. Department of State via the Clerk's Office, and the U.S. Department of State initiated

---

[1] Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Article 13, November 15, 1965 f4520725-8cbd-4c71-b402-5aae1994d14c.pdf (hcch.net).

the process of serving the governmental Defendants via diplomatic channels. On March 30, 2023, the State received the diplomatic notes from the U.S. Department of State confirming that service was effectuated for these six Defendants. 28 U.S.C. § 1608(a)(4). On March 22, 2023, the State delivered documents to the Clerk's Office to serve Defendants The Communist Party of China, Chinese Academy of Sciences, and Wuhan Institute of Virology. The service documents were sent to the U.S. Department of State on the same day. On February 13, 2024, the State received the diplomatic notes from the U.S. Department of State, confirming that these three Defendants were served on January 5, 2024. 28 U.S.C. § 1608(a)(4).

At this time, all Defendants in this case have been served and have failed to answer or otherwise defend against the State's Complaint. Even as additional declassified intelligence and investigative reporting uncover further details of China's complicity in the COVID-19 pandemic, Defendants have failed to answer or otherwise defend against the State's Complaint. Michael R. Gordon, Lab Leak Most Likely Origin of Covid-19 Pandemic, Energy Department Now Says, THE WALL STREET JOURNAL (Feb. 26, 2023) https://www.wsj.com/articles/covid-origin-china-lab-leak-807b7b0a?mod=article_inline; Dustin Volz, China's Refusal to Help Probes of Covid-19 Origins Leaves Critical Gap, Spy Chief Says, THE WALL STREET JOURNAL (March 3, 2023) https://www.wsj.com/articles/lack-of-chinese-cooperation-leaves-critical-gap-on-covid-19-origins-spy-chief-says-13cee980?mod=article_inline; Kristen Welker and Dareh Gregorian, China's stonewalling of Covid origin probe led Biden to reveal latest intelligence review,

3

NBC News (May 27, 2021) https://www.nbcnews.com/politics/joe-biden/china-s-stonewall-covid-origin-probe-pushed-biden-reveal-latest-n1268875. In fact, Defendants have twice communicated their purposeful disregard of the State's suit. The first package of diplomatic notes included a letter from the Ministry of Foreign Affairs of the People's Republic of China stating that they have no intention to "participate" in Plaintiff's lawsuit. Dkt. # 43-2. Before the second package of diplomatic notes was received, the U.S. Department of Justice filed a second letter on the docket, this time from the Embassy of the People's Republic of China, again stating, "The Chinese side does not accept and will not participate" in this case. Dkt. # 51.

Accordingly, the State filed a Motion for Default Judgment on July 18, 2023. This Court issued an order denying that motion without prejudice on March 1, 2024, and provided further instruction. Subsequently, the State obtained an entry of default from the Clerk and comes now to move for entry of a case management and scheduling order.

## II. ARGUMENT

Pursuant to the requirements of 28 U.S.C. § 1608, Mississippi respectfully requests that the Court exercise its discretion in the following manner to permit the State to conduct a limited period of discovery and hold an evidentiary hearing on December 9, 2024, or as soon thereafter as the Court's schedule may permit.

    I.    **This Court should authorize Mississippi to begin pursuing discovery on its claims.**

### A. Discovery against defaulting defendants and third parties is appropriate.

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case……" The FSIA, in turn, states that "[n]o judgement by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the Court." 28 U.S.C. § 1608(e). The FSIA's "'satisfactory to the court' standard is identical to the standard for entry of default judgments against the United States in Federal Rule of Civil Procedure 55([d])." *Owens v. Republic of Sudan*, 826 F.Supp.2d at 134; *see also* Fed. R. Civ. P. 55(d) ("A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court."). "In evaluating the plaintiffs' proof, the court may 'accept as true the plaintiffs' uncontroverted evidence.'" *Owens*, 826 F.Supp.2d at 135 (quoting *Elahi v. Islamic Republic of Iran*, 124 F.Supp.2d 97, 100 (D.D.C. 2000)). Here, because China has intentionally failed to appear, all the evidence will be uncontroverted. Furthermore, in evaluating a plaintiff's FSIA case against a defaulting foreign state entity, the Court may "receive[] evidence in the form of live testimony, videotaped testimony, affidavit, and original documentary and videographic evidence." *Id.*; *see also Elahi*, 124 F.Supp.2d at 99–100 (noting that the court accepted testimony from seven live witnesses and received 105 documentary exhibits in a FSIA trial against defendants who were in default).

Mississippi respectfully requests that this Court enter an order allowing the State to begin engaging in both direct discovery against defaulting defendants and third-party discovery, as necessary, to support its claims. Additionally, because Defendants remain in default, the State respectfully requests that this Court enter an order allowing the State to proceed without a Rule 26(f) conference and requests that the Court schedule a trial date at which the State could present written evidence and live testimony.

The requirement that a plaintiff prove her case on both liability and damages by "evidence satisfactory to the court" contemplates that a plaintiff may seek discovery in cases against defendants who are in default, because collecting and preparing such evidence often necessitates that the plaintiffs engage in direct and third-party discovery. *See, e.g. Hill v. Republic of Iraq*, 328 F.3d 680, 683 (D.C. Cir. 2003) (noting that, in enacting the FSIA, Congress "expected that courts will take into account the extent to which plaintiff's case depends on appropriate discovery against the foreign state.") (quoting H.R. REP. 94-1487, 26, 1976 U.S.C.C.A.N. 6604, 6621–22). In enacting FSIA, Congress opted to leave ordinary discovery rules intact, believing that "[e]xisting law appears to be adequate in this area." *Hill*, 328 F.3d at 683 (quoting H.R. REP. 94-1487, at 23 (1976)).

For this reason, courts regularly recognize the need for discovery (and, consequently, allow for discovery) in FSIA cases against foreign-state defendants in default. For example, in *Hutira v. Islamic Republic of Iran*, the plaintiff obtained a clerk's default against foreign-state Iranian defendants who allegedly participated in

the extrajudicial killing of the plaintiff's father. 211 F.Supp.2d 115, 117 (D.D.C. 2002). The plaintiff sought discovery regarding the murder through subpoenas to third parties. "Notwithstanding indicia of the defendants' willful default" and the entry of a clerk's default against them, the federal court recognized that the FSIA plaintiff was required to seek discovery "[i]n order to obtain evidence establishing her claim or right to relief that is satisfactory to the Court." *Id.* The court cited Rule 26(b)(1) for the proposition that an FSIA plaintiff seeking evidence against a defaulting defendant is subject to the same discovery standards as all other civil plaintiffs, and "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." *Id.* at 117–18 (quoting Fed. R. Civ. P. 26(b)(1));[2] *see also Calderon-Cardona v. Democratic People's Republic of Korea*, 723 F.Supp.2d 441, 461 (D.P.R. 2010) (allowing "live and affidavit testimony" and "affidavits and reports" to establish damages caused by a defaulting foreign-state defendant); *Saharkhiz v. Islamic Republic of Iran*, No. 19-cv-2938, 2023 WL 9196605, at *10–11 (D.D.C. Oct. 16, 2023) (slip copy) (observing that "[c]ourts deciding FSIA cases frequently rely on indirect evidence because of the nature of the issues presented" and ruling that the plaintiff carried his burden based on news articles, government reports, and judicial documents).

Likewise, in *Hake v. Citibank, N.A.*, FSIA plaintiffs sought discovery by third-party subpoena to procure evidence to prove liability against defendants who were in

---

[2] The court in *Hutira* ultimately determined that information sought by the particular subpoena at issue was barred by privilege. Nevertheless, it upheld the plaintiff's underlying right to seek such discovery to provide "evidence satisfactory to the court." *Id.*

7

default. No. 19-mc-00125, 2020 WL 1467132, at *1 (S.D.N.Y. Mar. 26, 2020). The court observed that the defendants had defaulted and that the plaintiffs "must establish their claims and right to relief through sufficient evidence." *Id.* (citing 28 U.S.C. § 1608(e)); *see also id.* (noting that plaintiffs "had good reason to serve [the third party] with subpoenas."). The court in *Hake* held that the usual standards of Rule 26(b) apply to such requests, including subpoenas to third parties: "Federal Rule of Civil Procedure 26(b) states that 'parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.' This includes discovery from non-parties." *Id.* at *4 (citation omitted) (quoting Fed. R. Civ. P. 26(b)(1)).

The approach taken by the district courts in each of these instances recognizes that "a FSIA default winner must prove damages 'in the same manner and to the same extent' as *any other default winner*." *Hill*, 328 F.3d at 683–84 (quoting 28 U.S.C. § 1606) (emphasis added). "Any other" default winner, in turn, is authorized to pursue discovery to establish the elements on which that default winner has a burden to prove. *See, e.g. Nutrition Distrib. LLC v. Musclegen Research Inc.*, 2017 WL 4391711, at *2 (S.D. Cal. Oct. 3, 2017) (allowing discovery and noting that "[o]ther courts have allowed discovery on the issue of damages after the entry of default") (collecting cases); *Alstom Power, Inc. v. Graham*, No. 3:15-cv-174, 2016 WL 354754, at *2–3 (E.D. Va. Jan. 27, 2016) ("Courts have allowed . . . discovery following entry of default but prior to entry of default judgment."). Because FSIA plaintiffs have the additional burden of establishing liability (in addition to damages) through "evidence

8

satisfactory to the court," discovery extends to questions of liability as well. 28 U.S.C. § 1608(e).

Accordingly, discovery is appropriate in this case as to both parties and non-parties to allow the State a full and fair opportunity to prove the merits of its claim.

### 1. Discovery from defaulting Defendants relating to Mississippi's claim.

First, Mississippi is entitled to seek discovery relating to its claims directly from the Defendants in default. To be sure, the State reasonably anticipates that those Defendants will not cooperate in discovery, since they have stonewalled the State's attempts to serve them and have now ignored valid service of process. But the FSIA and the rules of discovery provide for such an outcome. In enacting the FSIA, Congress "expected that courts will take into account the extent to which the plaintiff's case depends on appropriate discovery against the foreign state," and thus allowed for "the possibility of a relaxed evidentiary burden on the FSIA plaintiff" in the case of a defendant in default. *Hill*, 328 F.3d at 683, 684 (quoting H.R.REP. 94–1487, at 26 (1976)). Anticipating the non-cooperation of defaulting defendants, Congress explicitly noted that "appropriate remedies would be available under Rule 37, F.R. Civ. P., for an unjustifiable failure to make discovery." H.R. REP. 94–1487, at 46 n. 14 (1976).

### 2. Discovery from third parties relating to Mississippi's claim.

Mississippi also respectfully suggests that third party discovery is highly appropriate in this case. Given Defendants' refusal to engage in this lawsuit over the last several years, it is highly likely that they will similarly disregard discovery

9

requests served on them and any court order seeking to compel the same. As such, third party discovery will likely be necessary to support the State's claim in the face of Defendants' intransigence. Indeed, a great deal of relevant information held by third parties may be within the reach of civil process. *See, e.g.,* House Foreign Affairs Committee Report, Minority Staff, The Origins of COVID-19: An Investigation of the Wuhan Institute of Virology (117th Cong. Aug. 2021), at http://gop-foreignaffairs.house.gov/wp-content/uploads/2021/08/ORIGINS-OF-COVID-19-REPORT.pdf; Will Weissert, *DHS report: China hid virus' severity to hoard supplies* (May 4, 2020), https://apnews.com/article/us-news-ap-top-news-international-news-global-trade-virus-outbreak-bf685dcf52125be54e030834ab7062a8. These are just a few of many possible examples. The State is entitled to pursue such third-party discovery to prove the allegations in its Complaint with "evidence satisfactory to the Court." 28 U.S.C. § 1608(e); Fed R. Civ. P. 26(b)(1).

> **B. The Eight Circuit's ruling in *State of Missouri v. The Peoples' Republic of China* illustrates the viability of Mississippi's claims and the necessity for further discovery.**

The Eighth Circuit ruled on January 10, 2024, that the State of Missouri could proceed in pursuing its allegation that China illegally hoarded personal-protective equipment, describing China's alleged actions as "classic anticompetitive behavior." *State of Missouri ex rel. Bailey v. The People's Republic of China, et. al.,* 90 F.4th 930, 938 (8th Cir. 2024). The Court noted further that the defendants' anticompetitive actions were "commercial in nature", *Id.,* a "commercial activity", *Id.,* and the actions

10

of "a private player" in the market" *Id.* (citing *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 at 614).

While Mississippi and Missouri have alleged different violations of law, many of Mississippi's claims relate to Defendants PPE-hoarding activities, the same Missouri claim that was allowed to go forward. Consistent with the requirements of the FSIA, Mississippi has alleged that Defendants engaged in anticompetitive "commercial activity." 28 U.S.C. § 1605(a)(2). This activity had a "direct effect" in the United States and in the State of Mississippi. *Id.* Thus, as the Eight Circuit recognized when it remanded Missouri's claim for further proceedings, subject matter jurisdiction under the FSIA is proper in federal district court.

As for relief sought, Mississippi, like Missouri, now respectfully asks the Court for the following: to set a trial date, to allow Mississippi to conduct discovery and to allow for an evidentiary hearing. Such relief is necessary for the State to establish its case on both liability and damages in compliance with the FSIA.

### C. The Court should issue an order authorizing Mississippi to commence discovery.

Rule 26(f) requires that, unless "the court orders otherwise, the parties must confer as soon as practicable" to establish a discovery plan. Fed R. Civ. P. 26(f)(1). Mississippi "may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except…when authorized by…court order." Fed R. Civ. P. 26(d)(1).

This Court should enter a scheduling order explicitly dispensing with the

requirement of a Rule 26(f) conference and authorizing the State to begin seeking discovery by "court order" under Rule 26(d). As the last four years have demonstrated, requiring the parties to attempt to hold a Rule 26(f) conference would be futile and, indeed, almost certainly impossible. Defendants are in default and have demonstrated a continued refusal to acknowledge this lawsuit or participate in any way. In such situations, a court order to proceed with discovery is appropriate. *See, e.g., Banks v. Kottemann Law Firm*, CV 19-375-JWD (EWD), 2019 WL 1314614 (M.D. La. Dec. 5, 2019) (authorizing expedited discovery against a defendant in default without a Rule 26(f) conference, consistent with the good cause and reasonableness standard); *Kraho GmbH v. Overlord Ltd.*, CV 19-04050-AB (KSX), 2019 WL 8064249, at *2 (C.D. Cal. Dec. 20, 2019) (entering a court order authorizing the plaintiff to proceed with discovery after the defendant defaulted and no Rule 26(f) conference had occurred).

As the court in *Kraho* observed, "[c]ourts have . . . found good cause to authorize expedited discovery when a defendant defaults and the plaintiff seeks discovery to establish liability and/or damages in pursuit of default judgment." *Kraho*, 2019 WL 8064249, at *2 (citing *Twitch Interactive, Inc. v. Johnston*, No. 5:16-cv-03404-BLF, 2017 WL 1133520, at *4 (N.D. Cal. Mar. 27, 2017) (authorizing discovery in aid of forthcoming motion for default judgment from payment processors, financial institutions, and co-defendant); *Adobe Sys. Inc. v. Bunhey*, No. 5:13-cv-01365-VAPOP, 2013 WL 12140304, at *2 (C.D. Cal. Oct. 29, 2013); *Texas Guaranteed Student Loan Corp. v. Dhindsa*, No. 1:10-cv-00335-LJO-SKO, 2010 WL 2353520, at

\*3 (E.D. Cal. June 9, 2010)). The Court in *Kraho* therefore held that the "[p]laintiff ha[d] demonstrated good cause for expedited discovery," because "Defendant has failed to respond to Plaintiff's complaint, so Plaintiff has been prevented from participating in a Rule 26(f) conference and from obtaining discovery from Defendant . . . ." *Id*. The court noted that the "[p]laintiff [was] in the process of drafting a motion for default judgment against Defendants in which it intend[ed] to request an award of damages" and other relief, and it held that, "without discovery, [the] [p]laintiff cannot make an informed determination of the type of relief and the scope of relief that is warranted." *Id*. To allow the plaintiff to make that "informed determination," the court allowed the plaintiff to proceed with discovery, including discovery against both the parties and third-parties, to prove its case against the defaulting defendant. *Id*. at \*3; *see also, e.g., Richardson v. Virtuoso Sourcing Grp., LLC*, No. 8:15-CV-2198-T-17JSS, 2015 WL 12862517, at \*2 (M.D. Fla. Oct. 27, 2015) (authorizing a plaintiff seeking a default judgment against a defendant who had defaulted to proceed with third-party discovery without a Rule 26(f) conference, because "[t]o date, Defendant has not appeared in this action," and "[a]s such, it is unclear when and if the parties will conduct a Rule 26(f) conference.")

## II. This Court should schedule a two-day evidentiary hearing on December 9, 2024, or as soon thereafter as the Court's schedule permits.

Consistent with the State's July 18, 2023, motion and the approach taken by other district courts handling claims against defaulting defendants under FSIA, Mississippi, proposes to submit a combination of written affidavits and exhibits,

13

deposition transcripts, and live testimony with exhibits to prove both liability and damages. The FSIA permits proof by affidavits and documentary exhibits, and the Court may additionally "receive[] evidence in the form of live testimony, videotaped testimony, affidavit[s], and original documentary and videographic evidence." *Owens*, 826 F. Supp. 2d at 135; *see also Elahi*, 124 F. Supp. 2d at 99–100 (noting that the court accepted testimony from seven live witnesses and received 105 documentary exhibits in a FSIA trial against defaulting defendants). The State currently anticipates submitting both forms of evidence to prove its claims on liability and damages. The State proposes filing its written evidentiary submissions on or before the first day of the evidentiary hearing and currently anticipates taking approximately two business days to submit live testimony at the hearing. Reasonably anticipating that discovery, pursued diligently, may take at least six months to complete, the State requests a tentative trial date on December 9, 2024, or as soon thereafter as the Court's schedule may accommodate.

## CONCLUSION

For the reasons stated, the State respectfully requests that this Court enter an order stating the following:

(1) As Defendants have refused to answer the Complaint and are in default, no Rule 26(f) discovery conference is required;

(2) As Defendants have refused to answer the Complaint and are in default, the State is not required to provide initial disclosures under Rule 26(a);

(3) As Defendants have refused to answer the Complaint and are in default,

the State is not required to make any expert disclosures to Defendants; provided, however, that the State shall file with the Court the credentials and any report(s) of any expert witnesses who will testify at trial seven days before the start of the trial;

(4) Pursuant to Rule 26(d)(1), the Court orders that the State may immediately pursue discovery from parties and third parties relevant to its remaining claim against all Defendants;

(5) The State shall file a pre-trial brief outlining the evidence it plans to submit at trial for the Court's benefit seven days before the start of the trial;

(6) As Defendants have refused to answer the Complaint and are in default, the State is not required to make any pretrial disclosures to Defendants; provided, however, that the State shall file a list of witnesses it intends to call at trial seven days before the start of the trial;

(7) The deadline for amendments to the pleadings, if any, shall be 14 days before trial;

(8) The State shall file deposition designations and excerpts for any witnesses testifying by deposition seven days before the start of the trial;

(9) The State is authorized to submit evidence both in written form and by live testimony, and the State shall file other written forms of evidence, including affidavits and documentary exhibits (other than exhibits to be presented during live testimony), seven days before the start of the trial;

(10) The State shall file its list of trial exhibits on the first day of trial;

(11) Trial shall be set for two days beginning on December 9, 2024, or as soon

thereafter as the Court's schedule permits.

A proposed order reflecting the State's requests is attached hereto as Exhibit A.

Date: April 8, 2024                    Respectfully submitted,

                                                  LYNN FITCH, ATTORNEY GENERAL
                                                  STATE OF MISSISSIPPI

By: */s/ Elisabeth Hart Martin*
Elisabeth Hart Martin, Miss. Bar No. 106129
Deputy Director
Consumer Protection Division
P.O. Box 220
Jackson, MS 39205
(601) 359-4223
Hart.martin@ago.ms.gov

*/s/ Caleb A. Pracht*
Caleb A. Pracht, Miss. Bar No. 106327
Special Assistant Attorney General
Consumer Protection Division
P.O. Box 220
Jackson, MS 39205
(601) 359- 9011
Caleb.pracht@ago.ms.gov

*Attorneys for Petitioner.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2024, a true and accurate copy of the foregoing was electronically filed by using the Court's CM/ECF system to be served on all counsel of record entered in the case.

/s/ Elisabeth Hart Martin