CASE NO. 1:20CV168
State of MS
vs. People's Republic of China, et al
PLAINTIFF'S EXHIBIT P-14

DATE _____ IDEN.
DATE 2-10-2025 EVID.
BY Karen Butler
Deputy Clerk
AO 386



# Foreign Holdings of U.S. Agricultural Land

Through December 31, 2023



fsa.usda.gov

Foreign Holdings of U.S. Agricultural Land through December 31, 2023, by the Farm Service Agency and the Farm Production and Conservation Business Center, U.S. Department of Agriculture.

Abstract

Foreign persons held an interest in nearly 45 million acres of U.S. agricultural land as of December 31, 2023. This is 3.5 percent of all privately held agricultural land and 2 percent of all land in the United States. These and other findings are based on an analysis of reports submitted in compliance with the Agricultural Foreign Investment Disclosure Act of 1978.

Keywords: Agricultural land and foreign land holdings

The electronic version of this publication is available at this web address:

http://www.fsa.usda.gov/programs-and-services/economic-and-policy-analysis/afida/index

# Contents

Summary ............................................................................................................................................ iii

Introduction ....................................................................................................................................... 1
    Summary of the Act and Regulations ........................................................................................ 1
    Definitions .................................................................................................................................. 2

Analysis of Data Reported Under the Act ........................................................................................ 4
    Holdings ..................................................................................................................................... 4
    Concentration of Foreign Holdings of U.S. Agricultural Land .................................................. 4
    Country of Origin ....................................................................................................................... 5
    Chinese, Iranian, North Korean, and Russian Investment in U.S. Agriculture Land ................ 5
    Land Use .................................................................................................................................... 6
    Trends ........................................................................................................................................ 7
    Penalty Assessments ................................................................................................................. 7
    Impacts on Foreign Investment on the U.S. Agricultural Sector and Rural Economics ........... 7

**Figures:**

Figure 1, Proportion of Foreign-Held Agricultural Land to Privately Held Agricultural Land ........... 10
Figure 2, State Concentration of Foreign Holdings of Agricultural Land ........................................... 10
Figure 3, County Concentration of Foreign Holdings of Agricultural and Non-Agricultural Land ...... 11
Figure 4, County Concentration of Chinese Holdings of Agricultural and Non-Agricultural Land ... 12
Figure 5, County Concentration of Foreign Holdings of Crop Land ................................................... 13
Figure 6, County Concentration of Foreign Holdings of Pasture Land ............................................... 14
Figure 7, County Concentration of Foreign Holdings of Forest Land ................................................. 15
Figure 8, Trends in Foreign Holdings of Agricultural Land by Type of Use for the
    Period 2013 – 2023 ......................................................................................................................... 16
Figure 9, Compound Annual Growth Rate of Agricultural Land Values and Rental Rates By
    Whether or not Country Has Foreign-Owned Agricultural Land 2012-2022 ................................ 17
Figure 10, Compound Annual Growth Rate of Agricultural Land Values and Rental Rates By
    Change in Amount of Foreign Ownership 2012-2022 ................................................................... 18
Figure 11, Compound Annual Growth Rate of Agricultural Land Values and Rental Rates By
    State Prohibitions on Foreign Ownership of Agricultural Land 2012-2022 ................................... 19

**Cumulative Activity Reports:**

Report 1, U.S. Agricultural Landholdings of Foreign Investors by State as of December 31, 2023 .... 20
Report 1A, Comparison of U.S. Agricultural Landholdings of Foreign Investors by State as of
    December 31, 2022 and December 31, 2023 .................................................................................. 22
Report 1B, U.S. Agricultural and Non-Agricultural Landholdings by Country of Foreign Investor
    and by State .................................................................................................................................... 24
Report 1C, U.S. Landholdings by Foreign Investors by Type of Land Use and by State .................... 26
Report 2, U.S. Agricultural and Non-Agricultural Landholdings by Country of Foreign Investor
    and by State and County ................................................................................................................ 28
Report 3, U.S. Landholdings of Foreign Investors by Type of Land Use, and by State
    and County .................................................................................................................................... 132
Report 4, U.S. Agricultural and Non-Agricultural Investors, Parcels, Acres and Value by
    Country of Foreign Investor ......................................................................................................... 235
Report 5, Foreign Landholdings of U.S. Agricultural and Non-Agricultural Land by Country of
    Foreign Investor, and by U.S. Region .......................................................................................... 239

Report 6, Use of U.S. Agricultural Landholdings by Country of Foreign Investor ........................... 245

**Annual Activity Reports:**

Report 7, U.S. Agricultural and Non-Agricultural Landholdings Annual Activity of Foreign Investors by State, January 1, 2023 through December 31, 2023 .................................................. 251
Report 8, U.S. Agricultural and Non-Agricultural Land Acquisitions by Country of Foreign Investor, January 1, 2023 through December 31, 2023 ................................................................. 252
Report 9, U.S. Agricultural and Non-Agricultural Land Dispositions by Country of Foreign Investor, January 1, 2023 through December 31, 2023 ................................................................. 254
Report 10, U.S. Landholdings by Top 15 Chinese Foreign Investors and by State and County ......... 255
Report 11, U.S. Landholdings by Chinese Investors by Type of Land Use ............................... 258
Report 12, Penalty Table through December 2024 ........................................................ 289

## Summary

Foreign investors held an interest in nearly 45 million acres of U.S. agricultural land (forest land and farmland) as of December 31, 2023. This is an increase of over 1.5 million acres from the December 31, 2022 report and represents 3.5 percent of all privately held agricultural land in the United States. These and other findings are based on information submitted to the U.S. Department of Agriculture in compliance with the Agricultural Foreign Investment Disclosure Act of 1978. Forest land accounted for 48 percent of all reported foreign-held acreage, cropland for 29 percent, pasture and other agricultural land for 21 percent, and non-agricultural land for 2 percent. Foreign holdings of U.S. agricultural land increased modestly from 2012 through 2017, increasing an average of 0.6 million acres per year. Since 2017, foreign holdings have increased an average of nearly 2.6 million acres annually, ranging from 1.5 million acres to over 3.4 million acres per year.

# Foreign Holdings of U.S. Agricultural Land Through December 31, 2023

Mary Estep, Tricia Barnes, Cassandra Goings-Colwell, Dena Butschky, Catherine Feather, and Tom Gajnak*
Clayton Michaud of USDA's Economic Research Service authored the section on "Impacts of Foreign Investment on the U.S. Agricultural Sector and Rural Economies"

## Introduction

Foreign individuals and entities reported holding an interest in nearly 45 million acres of U.S. agricultural land as of December 31, 2023.** This is 3.5 percent of all privately held U.S. agricultural land and 2 percent of all land in the United States (see fig. 1 for State-level detail).

## Summary of the Act and Regulations

The Agricultural Foreign Investment Disclosure Act of 1978 (AFIDA),[1] as implemented by the regulations,[2] requires all foreign persons holding agricultural land as of February 1, 1979, to file a report of such holdings with the Secretary of Agriculture by August 1, 1979. All foreign persons who acquire or transfer an interest in agricultural land thereafter are required to report such transactions within 90 days of the date of acquisition or transfer. In addition, any foreign person who holds land that subsequently becomes or ceases to be agricultural land, or any person who holds agricultural land and subsequently becomes or ceases to be a foreign person, must also file a report within 90 days of such change.

AFIDA specifies in detail the information to be supplied by the foreign person and provides that necessary additional information may be obtained by the Secretary. The information required to be reported consists of the legal name and address of the foreign person; citizenship, if an individual; if not an individual or a government, nature of the legal entity, including the entity's country of creation and principal place of business; type of interest; legal description; acreage; land use; purchase price or any other consideration given; intended use; where applicable, information about the representative of the foreign person; how the interest in the land was transferred; the relationship of the owner to the operator; type of rental agreement, if any; and the date the interest in the land was transferred. In the case of a disposition, the party disposing of the interest is also required to give the legal name and address of the purchaser. Any change in the legal name or address of the foreign person and other entities disclosed on the report form must also be reported within 90 days of such changes. Failure to comply with the AFIDA will subject the foreign person and/or other entities disclosed on the report to a civil penalty of up to 25 percent of the fair market value of the interest held in the land in question.

In accordance with Section 7 of the AFIDA, completed report forms are available for public inspection

---

*Mary Estep and Tricia A. Barnes, AFIDA Specialists, Economic and Policy Analysis Division, Farm Production and Conservation, Washington, D.C., Cassandra Goings-Colwell and Dena Butschky Management and Program Analysts, Economic and Policy and Analysis Division, Farm Production and Conservation, Washington, D.C.; Catherine A. Feather, Branch Chief, Resource Economics Branch, Economic Policy and Analysis Division, Farm Production and Conservation Business Center, Washington, D.C.; and Tom Gajnak, acting Branch Chief, Data Services Branch, Economic Policy and Analysis Division, Farm Production and Conservation Business Center, Washington, D.C.

** This publication contains data gathered from January 1, 2023 through December 31, 2023

[1] Pub. L. No. 95-460, 7 U.S.C. §§ 3501-3503, 3505-3508 (1988).

[2] 7 C.F.R. §§ 781.1-.6 (1994). See 7 C.F.R. §§ 2.21(b)(29), .27(a)(12), .65(a)(30), and .84(a)(7) (1994) for the delegation of authority.

1

in Washington, D.C., within 10 days of receipt by the Secretary. Section 6 of the Act requires that every 6 months the Secretary transmit to each State copies of completed report forms for foreign-held interests in agricultural land in that State.

**Definitions**

For this report, the term "holdings" applies to all U.S. agricultural land interests held by foreign investors as of December 31, 2023.

"Agricultural land" as defined in the Act includes all land in the United States used for forestry production. Land used for forestry production means land exceeding 10 acres in size in which 10 percent is stocked by trees of any size including land that formerly had such tree cover and will be naturally or artificially regenerated. The regulations further define agricultural land as all land used for farming, ranching, or timber production if the tracts are more than 10 acres in size in the aggregate. Land which is currently idle, but last used within the past 5 years for farming, ranching, or timber production, must be reported. Tracts totaling 10 acres or less in the aggregate, and which produce annual gross receipts in excess of $1,000 from the sale of farm, ranch, forestry or timber products, must also be reported.

AFIDA requires reporting "any interest" in the land other than a security interest. The regulations exempt leaseholds of less than 10 years' duration, contingent future interests, non-contingent future interests that do not become possessory upon termination of the present estate, non-agricultural easements and rights-of-way, and interests solely in mineral rights.

A "foreign person," as defined in the Act, includes any individual who: (1) is not a citizen or national of the United States, (2) is not a citizen of the Northern Mariana Islands or a territory or possession of the United States, or (3) is not lawfully admitted into the United States for permanent residence. Foreign governments, entities which are created under the laws of, or have their principal place of business in a foreign country, and U.S. entities in which there is a significant foreign interest or substantial control are also defined as foreign persons under the Act. Any person who has been issued the Department of Homeland Security, U.S. Citizenship and Immigration Services "Alien Registration Receipt Card" (permanent resident or green card) is considered lawfully admitted for permanent residence and is exempt from the requirements of the Act.

Individuals are defined as one person or a husband and wife. The "partnership" category includes all legally defined partnerships, joint ventures, and tenancies in common that include two or more persons who are not married. The term partnership does not differentiate between joint tenancies and tenancies in common. In the interest of simplicity and brevity, fine legal distinctions, however important in an individual case, are ignored.

Each foreign entity holding an interest in U.S. agricultural land is required to file a report. Therefore, if two individuals hold an interest in land as a partnership, the partnership is to file one report as a partnership, with the partners' names, addresses, and citizenship listed on the FSA-153 form. Occasionally, however, two people file as individuals, each filing a separate report on the same land with a partial interest of, for example, 49 percent listed on each form. Because it is not always possible to distinguish separate reports for the same land, two such individuals cannot be differentiated from one partnership. This may occur when there is no legal partnership, but individuals hold an interest in the land as tenants in common. If they file together on one form, they are automatically considered a partnership. If they file separately, they are generally considered individuals. Therefore, the data on the number of reported parcels should be used with caution, although there is no double-counting of acres.

## Analysis of Data Reported Under the Act

### Holdings

Data in this section are derived from FSA-153 reports filed by foreign persons who held an interest in U.S. agricultural and non-agricultural land as of December 31, 2023. To simplify the discussion, the data as of December 31, 2023, hereafter are referred to simply as '2023'. Foreign-held U.S. agricultural acres as of December 31, 2022 were 43.4 million. Foreign-held U.S. agricultural acres as of December 31, 2023 were nearly 45 million, resulting in an increase of approximately 1.5 million acres (report 1A).

### Concentration of Foreign Holdings of U.S. Agricultural Land

Foreign persons have reported acreage holdings in all 50 States and Puerto Rico[3] (figs. 1 and 2). Except for Maine (described below), only a small percentage of privately held agricultural land in the other 49 States is held by foreign investors (report 1). Maine acreage aside, foreign investment in U.S. agricultural land is concentrated in the South and West.

Texas has the largest amount of foreign-held U.S. agricultural land with over 5.6 million acres (report 1). Maine has the second largest amount of foreign-held agricultural acres, with just under 3.5 million. Colorado has the third largest amount of foreign-held agricultural land with 2.5 million acres. The majority of foreign-held agricultural land in Texas and Maine consists of forest land, while cropland is most important in Colorado (report 1C).

In terms of percentages, approximately 21.1 percent of Maine's privately held agricultural land is held by foreign investors; this is approximately 8 percent of the reported foreign-held agricultural land in the United States (report 1). Hawaii has the second largest percentage of foreign-held U.S. agricultural land, which is 17.1 percent of the privately held agricultural land in the state, and less than 1 percent of the reported foreign-held agricultural land in the United States. Michigan (8.5 percent), Louisiana (8.4 percent), and Florida (8.2 percent) have the next largest percentages of reported foreign-held agricultural land.

States showing the largest increases in foreign-held agricultural acres in 2023 were New Mexico, with an increase of over 358,000 acres; Texas with an increase of over 219,000 acres; and Arkansas, with an increase of over 178,000 acres (report 1A). Fifty percent of the overall increase in acreage between 2022 and 2023 is attributed to these three states. These increases mostly reflect large purchases of forest land. Alabama, Arizona, Colorado, Indiana, Iowa, Michigan, Montana, and Virginia are the only states showing a decrease in foreign-held agricultural acres; the 265,262-acre decline in these eight states reflects long-term leaseholds which were terminated and the sale of various types of agricultural land. Note that some of the changes in report 1A reflect reconciliation of past transactions and the recording of late filings.

The data reflected in Report 1 and Report 1A pertain to foreign land holdings of agricultural land and do not include holdings of non-agricultural land. There are about 923,000 reported acres of foreign-held non-agricultural land. Reports 1B, 1C and reports 2-9 include the non-agricultural land category.

County concentrations of foreign holdings of agricultural and non-agricultural land within the continental United States are shown in Figure 3.

---

[3] Some states regulate foreign ownership of agricultural land, which may appear inconsistent with AFIDA reported acreage. Note that certain state regulations apply to both long term leases and land purchases, while in other states the restrictions apply only to land purchases. The timing of when state laws were enacted, issues associated with ownership tiers, and other factors may also explain differences.

### Country of Origin

Canadian investors own the largest amount of reported foreign-held agricultural and non-agricultural land, with 33 percent, or 15.3 million acres (report 1B). Foreign persons from an additional four countries, the Netherlands with 11 percent, Italy with 6 percent, the United Kingdom with 6 percent, and Germany with 5 percent, collectively held 13 million acres or 28 percent of the foreign-held acres in the United States. The remaining 17.4 million acres, or 38 percent of all reported foreign-held agricultural and non-agricultural land, are held by various other countries. For example, China held 277,336 acres (see Report 11), which is slightly less than 1 percent of foreign-held acres.

### Chinese, Iranian, North Korean, and Russian Investment in U.S. Agricultural Land

Even though Chinese, Iranian, North Korean and Russian filings are less than 1 percent of foreign-held agricultural land acres in the U.S., there is considerable interest in their holdings. Chinese primary-investor filers reported owning 277,336 acres of agricultural land as of December 31, 2023; Iranian filers reported owning 3,030 acres; North Korea had no acres; and Russian investors reported 11 acres. Two Chinese-owned companies—Murphy Brown LLC (Smithfield Foods) and Brazos Highland Properties, LP—reported 89,218 acres and 86,994 acres, respectively, and were by far the largest Chinese holders of U.S. agricultural land. Other top Chinese-owned reporters were Murphy Brown of Missouri (Smithfield Foods/WH Holdings) (43,091 acres); Harvest Texas, LLC (29,705 acres); and U.S. Agri-Chemicals Corp. (11,263 acres) (Report 10). These five companies accounted for 94 percent of all reported Chinese holdings. There were no filings directly by the government of China.

Chinese investments in U.S. agricultural land are spread across the country (figure 4). The states with the largest Chinese holdings are Texas (123,708 acres); North Carolina (44,263 acres); Missouri (42,905 acres); Utah (33,035 acres); and Florida (12,798 acres) (Report 11). Together, these five states had 93 percent of the acreage associated with Chinese filings. In Texas, in particular, long-term leases associated with wind energy investment predominate, while land ownership tends to be more common in other states.

Several caveats are important. To make tracking of foreign investment tenable, given that thousands of transactions are reported annually and that manual data entry occurs from hard copy filing submissions, holdings are recorded by primary investor. If investors from multiple countries are listed on the FSA-153 form, and the primary shareholding country cannot be determined, the holding is recorded as "no predominant country." As a result, the acreage associated with China—or any other country discussed in this report—should be interpreted as a minimum. For example, a Chinese investor which is part of a multi-country investment group, or having a multi-country complex organizational structure, may well fall in the "no predominant country" category. In such cases, China's interest would be under-represented.

In 2023, there were 15 new acquisitions reported by China (see Table 1 below). There were no new acquisitions reported by Iran, North Korea, or Russia. Also, in response to a U.S. Government Accountability Office (GAO) recommendation, USDA began capturing secondary and higher interests (beyond the primary investor) associated with China, Iran, North Korea, and Russia for filings received in 2023. The only country among the four with any associated secondary interests was China (see Table 2).

Table 1. Filings Received in 2023 by Investors with a Primary Interest Held by an Owner from China

| State | County | Owner Name | Acres | Country |
|---|---|---|---|---|
| California | Glenn | Syngenta Seeds, LLC | 47.53 | China |
| California | Kern | Huaxiang Yin, Junping Yang | 118.15 | China |
| California | Kings | Huaxiang Yin, Junping Yang | 40 | China |
| California | Yolo | Syngenta Seeds, LLC | 150 | China |
| Florida | Lee | Syngenta Flowers, LLC | 145 | China |
| Idaho | Canyon | Syngenta Seeds, LLC | 40.92 | China |
| Idaho | Canyon | Syngenta Seeds, LLC | 52 | China |
| Idaho | Canyon | Syngenta Seeds, LLC | 54 | China |
| Kansas | Rooks | Murphy Brown LLC (Smithfield Foods) | 160.8 | China |
| Maryland | Harford | Chesapeake View - Walton | 106.67 | China |
| Missouri | Linn | Murphy Brown LLC (Smithfield Foods) | 25 | China |
| Nebraska | Madison | Zhou, Zhao Wen | 86.17 | China |
| North Carolina | Edgecombe | Murphy Brown LLC (Smithfield Foods) | 161.23 | China |
| Texas | Collin | Princeton Commercial - Walton | 13.075 | China |
| Virginia | Greensville | Murphy Brown LLC (Smithfield Foods) | 111.06 | China |

Table 2. Filings Received in 2023 by Investors with a Secondary Interest Held by an Owner from China

| State | County | Owner Name | Acres | Primary Country | Secondary Country |
|---|---|---|---|---|---|
| Arizona | Pinal | Walton International Group (USA), Inc. | 87.51 | Canada | China |
| Colorado | Weld | Solstice – Walton | 177.78 | Singapore | China |
| Colorado | Weld | Stonebreaker – Walton | 208.94 | Singapore | China |
| Delaware | New Castle | STA Pharmaceutical USA, Co. | 189.55 | No Predominant Country | China |
| Florida | Indian River | Hibiscus – Walton | 152.61 | Japan | China |
| Florida | Polk | Kingsford Farms – Walton | 127.443 | Singapore | China |

Note that we have amended our records since the 2022 report was released and made data entry corrections. These corrections primarily involve Walton International Group (USA), Inc. filings that had incorrectly been attributed to China. Many of the Walton filings were predominantly associated with other Asian countries instead. Beyond these corrections, we have done extensive research to identify situations whether or not Chinese, Iranian, North Korean, and Russian filings made decades ago are no longer foreign held, even though we have not received a disposition filing, and removed these from our system.

## Land Use

Forty-eight percent of the reported foreign interest holdings of U.S. land are timber or forest, with cropland accounting for 29 percent of the total acres (report 1C). Foreign-held pasture and other agricultural land total 21 percent of all foreign interest holdings in the United States.

The non-agricultural land category, which includes homesteads and roads, accounts for approximately 2 percent of the reported foreign-held acres in the United States. Land use figures should be used with caution because they reflect information received at the time of processing and do not account for changes in land use that may have occurred subsequently.

County concentrations of foreign holdings of cropland, pasture land, and forest land within the continental United States are shown in Figures 5 through 7.

### Trends

Foreign holdings of U.S. agricultural land increased modestly from 2013 through 2017, increasing an average of 0.6 million per year. Since 2017, foreign holdings have increased an average of nearly 2.6 million acres, ranging from 1.5 million acres to 3.4 million acres per year.

All categories increased between 2013 and 2023, led by gains in cropland (figure 8). During this time period, cropland increased 146 percent from roughly 5.4 million to 13.2 million acres, forest land increased 60 percent from roughly 13.7 million to 22.0 million acres, and pasture land increased 32 percent from approximately 5.8 million acres to nearly 7.7 million acres. The changes in pasture and cropland are mostly due to foreign-owned wind companies signing, as well as terminating, long-term leases on a large number of acres. The actual amount of land used by a wind farm is relatively low due to the small footprint of the wind turbines and limited use of access roads. This leaves most of the parcel available for agricultural use.

### Penalty Assessments

A total of $1.2 million in penalties were assessed in 2024, composed of $13,374 for non-filings and the remaining amount for late filings (Report 12). This is the largest number of penalties by far assessed in any year as well as the largest aggregate assessed amount. Given staffing limitations and that AFIDA is a manual process (data are entered from paper filings into the AFIDA database), data entry occurred in the calendar year prior to the penalty assessment work and penalty letter mailings to foreign investors (or their representatives). As a result, all assessment dates are shown in Report 12 as December 2024, when penalty letters were mailed. Foreign investors usually pay their assessed penalties within one to three months after receiving the penalty letter. The largest penalty assessments made in 2024 were to the following entities: Kylix Vineyards California, LP ($86,561); Copus Road Almonds, LLC ($85,952); MP Central A, LLC ($84,277); Central Almonds, LLC ($77,057); and Iron Star Wind Project, LLC ($60,093). These five entities accounted for 33 percent of filings assessed in calendar 2024.

### Impacts of Foreign Investment on the U.S. Agricultural Sector and Rural Economies

To assess the impact of foreign investment on farms and rural economies, changes in agricultural land values and land rental rates were compared across counties with differing characteristics regarding foreign investment in agricultural lands. Both land values and rental rates have implications for farm wealth and access to credit, expenses paid by farm and ranch operators, and land access for beginning farmers and ranchers.

To conduct the analysis, the rate of change in four measures—the per-acre values of agricultural land, the per-acre rental rates for irrigated and non-irrigated cropland, and the per-acre rental rates for pastureland—were calculated at the county level in a comparison of 2012 and 2022 using data from the National Agricultural Statistical Service's Census of Agriculture. (The Census of Agriculture is conducted every five years; the most recent data available are for 2022.) In the first two parts of the analysis, the four changes were compared across counties with and without the presence of foreign-held agricultural lands (Figure 9), and counties that saw increased, decreased, or equal foreign-held agricultural land (Figure 10). Note that when we consider rental rates, counties are classified according to that specific land type, e.g. in the first analysis pastureland rental rates are compared across counties that did and did not have foreign-held pastureland, rather than any type of foreign-held agricultural land.

The results of the first analysis (Figure 9) indicate that there are no significant differences in the growth rate of agricultural land values, pasture rental rates, and non-irrigated cropland rental rates across counties that have—as opposed to those that do not have— foreign investment in agricultural land. The thin blue vertical lines at the top of each blue bar represent 95% confidence intervals based on t-tests with the p-value in the bottom right corner of each subplot. Traditionally, a p-value must be less than 0.05 for the differences between the samples to be statistically significant. While we do find statistically significant differences amongst irrigated cropland rental rates – with counties without foreign ownership experiencing higher annual growth rates – there were only 30 counties that had both foreign-held cropland as well as irrigated cropland rental rates provided by the Census of Agriculture, resulting in a relatively small sample size for this group.

For a deeper examination, the analysis was expanded to include categorization by whether foreign ownership increased or not over this time period. Four categories were used to group counties by specific characteristics: counties that saw an increase in the level of foreign-owned acreage between 2012 and 2022 (designated by "Gained FO" in Figure 10), those that saw a decrease ("Lost FO"), those that saw no change (and had zero foreign ownership—"No Change (FO = 0)"), and those that saw no change (and had foreign ownership—"No Change (FO > 0)"). For the case of agricultural land values, we considered all foreign-held agricultural land, while for the cropland and pastureland rental rates, counties were classified based on changes in foreign-held cropland and pastureland, respectively. The results indicate that there are few consistent patterns (see Figure 10). The large confidence intervals and relatively high p-values imply that there are no statistically significant differences between the different foreign-ownership categories. The only statistically meaningful finding in this analysis is that counties that saw a decrease in foreign-held agricultural land saw below average growth in agricultural land values (4.1 percent as compared to the average of 4.4 percent across all counties) as demonstrated by the fact that the 95 percent confidence interval on the top left-most bar falls just below the dotted horizontal line that represents the average across all counties. However, as shown by both the high p-value (well above 0.05) and overlapping confidence intervals for the other bars, this below-average growth rate was not statistically significantly different than that of counties which saw increases in their foreign-held acreage, suggesting there is no clear relationship[4].

As a third analysis, the relationship between state laws prohibiting foreign ownership of agricultural land were compared at the county level between 2012-2022 using the four variables discussed above (Figure 11). Based on their state's laws, each county within a state was classified as either restricting or not restricting foreign ownership of U.S. agricultural land. (Information on state laws was obtained from The National Agricultural Law Center (https://nationalaglawcenter.org/state-compilations/aglandownership/) based on data as of March 2022.) States with restrictions included Georgia, Indiana, Iowa, Kansas, Kentucky, Maryland, Minnesota, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, Pennsylvania, South Carolina, South Dakota, Virginia, and Wisconsin.

The economic intuition behind why state laws prohibiting foreign ownership of agricultural land might affect the rate of change of agricultural land values and cash rents is important to understand. One possible explanation for the results above—that there is no significant relationship between changes in foreign ownership and changes in land values—is that as foreign demand (and land prices) start increasing in one county, investors simply look for better deals elsewhere and rates of appreciation balance out. However, if there are certain states where foreign investment is prohibited, then one might

---

[4] As a further analysis, we conducted a number of two-way tests to better understand this finding. When we compared counties with decreased foreign ownership against the other three groups combined, the p-value was 0.039, which implies a statistically significant difference between those two groups. However, when we directly compare counties that saw decreased foreign ownership to those that saw an increase, we get a p-value of 0.519, which implies that there is not a statistically significant difference in the annual growth rate of agricultural land values between counties that gained and counties that lost foreign investment in agricultural land.

expect that counties in those states would see smaller agricultural land values increases (and thus rental rate increases) than they would if foreign investors were able to "bid up the price."

Comparing counties in states with and without restrictions on foreign ownership of U.S. land, we see statistically significant differences in the growth of land values, with counties in states without restrictions experiencing above average growth in agricultural land values (roughly 4.6 percent annually), and counties in states with restrictions experiencing below average growth rates (roughly 4.2 percent annually). Counties in states with such restrictions also experienced increases in the rental rate of irrigated cropland that was statistically significantly lower (roughly 2.1 percent annually) than counties in states with no restrictions (roughly 2.8 percent annually), though there was no statistical difference when non-irrigated cropland rental rates are examined. Surprisingly, we observe the opposite relationship regarding pastureland rental rates, with rental rates increasing significantly more in counties in states with restrictions (roughly 2.4 percent annually) than in those without (roughly 1.5 percent annually). Thus, while we find evidence of a correlation between restrictions on foreign acquisition of U.S. land and slower rates of growth of agricultural land values, lack of a consistent finding on rental rates suggests that other factors —such as geography—need to be included in future research on impacts of foreign ownership.

**Figure 1**



**Figure 2**

